THE WOMAN'S FOREIGN MISSIONARY SOCIETY OF THE M. E. CHURCH *vs.* JOHN T. MITCHELL, Administrator, c. t. a., of M. A. SHERMAN et al.

*Charitable and Religious Uses—Misnomer of Corporation as Legatee— Bequest of Funds to be Used Within the Corporate Functions—Designation of Use to be Made of Legacy Creating a Condition and not a Trust.*

The misnomer of a corporation will not defeat a devise or bequest to it, if its identity is otherwise sufficiently certain.

By the residuary clause of her will, a testatrix directed that the property passing thereunder be sold and the proceeds "be held in trust by the Board of Managers of the Foreign Missionary Society of the Methodist Episcopal Church of the U. S. A. for the following purposes * * * that sufficient be used to educate as Bible readers in India six girls to be named, etc.; the money remaining after that set aside for the education of the aforesaid Bible readers to be applied to the purchase of a building to be used for the education of girls in India to be called the M. Adelaide Sherman Home." There was no corporation having the exact name of that mentioned in this clause, but there is one named The Woman's Foreign Missionary Society of the M. E. Church. This is the only missionary society of that church engaged in the work referred to by the testatrix, and she was a member of it and took a deep interest in its work. *Held,*

1st. That the Woman's Foreign Missionary Society of the M. E. Church is the corporation intended by the testatrix to be the residuary legatee.

2nd. That the testatrix did not intend to create a trust by the mention of the purpose for which the funds bequeathed were to be used, because the education of girls in India as Bible readers is the purpose to which the money given would have been applied under the charter of the corporation, and that the words relating to the use of the legacy operate at the most as a condition affecting the expenditure and not to the vesting of the legacy.

3rd. That the clause relating to the purchase and name of a building in India for the education of girls does not create a trust void for indefiniteness, but it is a gift for the corporate use of the legatee coupled with a condition that the building should bear the name of the testatrix.

Appeals from a decree of the Circuit Court for Garrett County (STAKE and SLOAN, JJ.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Frederick W. Story* and *Rignal W. Baldwin* (with whom was *Thomas J. Peddicord* on the brief), for the appellant.

*R. T. Semmes* and *John T. Mitchell* (with whom was *E. L. Mitchell* on the brief), for the appellees.

McSHERRY, C. J., delivered the opinion of the Court.

There are two appeals in this record and both were taken from the same decree. That decree disposed of two cases which had been previously consolidated. One of those cases was instituted on the equity side of the Circuit Court for Garrett County by "The Woman's Foreign Missionary Society of the Methodist Episcopal Church" against John T. Mitchell, administrator, *cum testamento annexo*, of Maria A. Sherman; and the other was filed in the same Court by Isaiah M. Sherman and others against John T. Mitchell, administrator, *cum testamento annexo*, and "The Woman's Foreign Missionary Society of the Methodist Episcopal Church" and others. In each of those proceedings precisely the same questions were presented for adjudication, though they were presented in opposite ways, and the cases were therefore properly consoli-

dated.    These questions—and there are two controlling ones
—involve the interpretation of Maria A. Sherman's will.   One
of these inquiries is whether "The Woman's Foreign Mission-
ary Society of the Methodist Episcopal Church" is the devisee
and legatee intended to be named and actually described in the
residuary clause of the will ; and the other is, whether that
residuary clause is valid.   Its validity is assailed on the ground
that it creates a trust whose objects are indefinite and uncer-
tain.    By the decree appealed from the bill in the first case,
under which the Woman's Foreign Missionary Society claimed
the residuary estate, was dismissed ; whilst the relief sought
in the second, viz., the annulment of the will, was granted.
We shall not have occasion to refer to the proceedings any
further.    We will at once take up and dispose of what we have
said are the two controlling questions in the consolidated
cases.

The clause of the will which gives rise to the pending con-
troversy is in these words: " I direct that my two houses and
lots in Mountain Lake Park, Garrett County, Maryland, and
my lots in Covington, Kentucky, and the stock in the South-
ern Building Association held in care of W. G. Hay, of
Hagerstown, Maryland, and all other property, both real and
personal, other than that already bequeathed, be sold, and
the proceeds, thereof, together with whatever monies I may
die possessed, be held in trust by the Board of Managers
of the Foreign Missionary Society of the Methodist Epis-
copal Church of the United States of America for the
following purposes: After all my debts, bequests and pro-
vision for my burial, etc., be paid, that sufficient be used to
educate as Bible readers in India six girls, one to be named
' Dorcas  Sherman ;'   one ' Avis Cecil Sherman ;'  one ' Mary
Jane Sherman ;'   one ' Sarah  Jennie  Sherman ;'  one ' Jennie
Smith ;'  one ' Grace Mabel Sherman ;'  the money remaining
after that set aside for the education of the aforesaid Bible
readers to be  applied  to the purchase of a building to be used
for the education of girls in India to be  called  the ' M. Ade-
laide Sherman Home, ' and the  location  of said  building  to
be left to the decision of Bishop Thoburn or his succesors. "

Of late years we have repeatedly had occasion to state the various rules to which resort may be had in the interpretation of wills and they have become so familiar that we need not now reiterate them. The cardinal canon around which all others centre is this, that the intention of the testator when ascertained from the whole instrument, or from the instrument as read in the light of surrounding circumstances existing at the date of its execution, must be given effect if that intention does not antagonize or conflict with some rule of law or of property. At the threshold we are met face to face by the fact which stands out prominently, that the attempt made under the second of the consolidated bills is to strike down the intention of the testatrix, though that intention ought to be gratified if it is legally possible to do so. If the collateral kindred who filed that bill succeed in getting the property disposed of by the residuary clause just quoted, they will get it, not because the testatrix wished them to have it, but in spite of the obvious fact that she did not want them to possess it at all. Her intention would be defeated instead of being respected.

Starting with the indisputable fact that the testatrix did not intend her collateral relations to have the property in question, because she specifically declared that it should go in a totally different direction, let us see whether the body corporate which filed the first of the two consolidated bills, and which claims that *it* is entitled to the property is the same entity which is misnamed in the will but which was designed by the testatrix to be the object of her bounty. This is a question purely of identification. The misnomer of a corporation will not defeat a devise or a bequest to it if its identity is otherwise sufficiently certain. Adjudged cases on this subject do not help in solving the inquiry now under consideration, though they may illustrate the application of the principle which must in the end determine the controversy. At most they merely hold that under their own peculiar facts there were misnomers which did not obscure the identity of the real beneficiary ; or else under other conditions that the

misdescriptions were incurably defective and consequently that the attempted gifts were inoperative. All such cases are controlled by the same principle ; and to that principle rather than to its application in other judgments resort must be had in these appeals. That principle, distinctly relating to this inquiry, is that the real and actual intention with respect to the identity of the devisee as that intention is gathered from the face of the will, or from the face of the will when viewed in the light of all the circumstances which surrouuded the testatrix when the will was made, must be gratified if this can be done consistently with recognized rules of law ; for when it is clear *who* was intended to take, the accidental miscalling of the beneficiary's name will not invalidate the gift. If it did, then, that accident would defeat the otherwise clear intention.

Now, it cannot admit of a doubt that Miss Sherman intended *some* Foreign Missionary Society of the Methodist Episcopal Church to be the recipient of her bounty, because she has said so in plain and unambiguous words. But there is no such corporate or other body as the " Board of Managers of the Foreign Missionary Society of the Methodist Episcopal Church," though there is an organization having a corporate existence and named The Woman's Foreign Missionary Society of the Methodist Episcopal Church. This latter, as the evidence shows, is the *only* foreign missionary society in the Methodist Church that is engaged in the particular work which the will indicates the intended devisee and legatee was expected to perform with the proceeds of the residuary estate. The identification of the beneficiary depends not wholly on its name· The clause in question whilst calling the beneficiary the Board of Managers of the Foreign Missionary Society has set at rest all doubts as to identity by describing the beneficiary as a society engaged in mission work amongst women and girls in India—a work in which no other organization of the Methodist Episcopal Church is enlisted, in that distant land, save the Woman's Foreign Missionary Society. Of this society the testatrix was a member and she was herself an evangelist. It has been clearly shown by the evidence that she took a deep interest in

the benevolent work of this society; that the society is sup-
ported by women and that its mission is exclusively amongst
women and girls.    Its charter, granted under the laws of New
York, specifically declares " that the particular business and
object of said society is to engage and unite the efforts of
Christian women in sending female missionaries to women in
foreign mission fields of the Methodist Episcopal Church, and in
supporting them and native Christian teachers and Bible readers
in those fields."    India is one of those fields.    Here, then, we
have a clear and explicit expression of an intention to give the
residuary estate not only to *a* Foreign Missionary Society of
the Methodist Episcopal Church, but to a *particular* Foreign
Missionary Society of that church, which society is described
as engaged in a class of work that no other known organiza-
tion in that denomination performs or professes to perform,
and of which society the testatrix was herself a member; and
yet we are asked to disregard all this unerring evidence of
identification solely because in the *name* by which the clearly in-
dicated *thing* is called the words "Board of Managers" are inac-
curately used where the word "Woman's" ought to have been
written.    This request proceeds upon the hypothesis that the
name must control the description, inasmuch as the name is
not merely a means of identification, but is the entity itself.
This is obviously fallacious.    The *name* of a corporation is no
more the corporation than is the name of an individual, the
individual. It is the *identity* of the individual, natural or artificial,
that is material, and not the *name*, for that is simply one of
the numerous means by which the identity is ascertained.  The
*identity* being established the *name* is of no importance.    Con-
sequently when it clearly appears from the will what corpora-
tion was meant and intended to be the beneficiary, and there is
a sufficient *description* of that corporation, the gift will not fail
merely because the devisee and legatee has not been called by
the precise name it may bear.    This is fully illustrated by the
recent case of *Reilly* v. *Union Protes. Inf.*, 87 Md. 664.  But apart
from adjudged cases this proposition is so inherently self-evi-
dent as to be perfectly obvious without further discussion.  We

conclude then, that there is no reasonable ground to suggest a doubt as to what society was intended to be the beneficiary ; and that the Woman's Foreign Missionary Society is entitled. to the residuary estate if the will is otherwise free from imperfections.  This brings us to the consideration of the second inquiry, viz., is the residuary clause void by reason of its creating a trust whose objects are vague, indefinite and uncertain ?

Not a great deal need be said in disposing of this inquiry. If there is no trust created, or if none was intended to be created, as to this *residuum*, then there can be no trust that is void by reason of the objects of it being indefinite and uncertain.  So, clearly, the first question to be determined is whether there *is* a trust which has been actually created pursuant to an intent to create one?  It is true the testatrix declared that the property should "be held in trust by the Board of Managers. &c. for the following purposes."  These purposes, it is alleged are, after the payment of debts, bequests and funeral expenses, "that sufficient be used to educate as Bible readers in India six girls" to be named as directed in the clause, and that "the money remaining after that set aside for the education of the aforesaid Bible readers" should "be applied to the purchase of a building to be used for the education of girls in India to be called the 'M. Adelaide Sherman Home,' and the location, of said building to be left to the decision of Bishop Thoburn or his successors."  Excluding the sums applicable to the payment of debts, legacies and funeral expenses, there is and can be no trust at all.  If there be a manifest design *not* to establish a trust, then no trust will be declared though the words; employed would or might, but for the contrary intention, be sufficient to create a trust.  *Bennett* v. *Balto. Humane So.,* 91 Md. 10.  Now, perhaps, had the precise phraseology, which is found in the will before us, been used in making a like devise and bequest to a natural person, it might be said that the design was to create a trust, because the purposes indicated are not those ordinarily performed by an individual; but when it is remembered that the very end which the corporation here made the beneficiary was organized to effect is the education

of Bible readers and the instruction of girls in foreign lands, it becomes evident that the property was given to the corporation not in trust for indefinite objects, but that it was given to it to be used for its recognized and clearly defined corporate purposes. The specific design of the gift is that the proceeds of the property shall be used, that is spent, by the beneficiary for *its* chartered ends and not for some one else's benefit. The corporation is not to hold the fund for the use of others, but it is to spend that fund in the prosecution of its missionary work. The declaration by the testatrix that the funds should be used to educate six Indian girls as Bible readers impresses no trust upon the fund, because the education of girls, whether six, or more or less, as Bible readers is precisely the purpose to which the funds would have been applied had the gift been made to the same devisee and legatee without these superadded words. It may and probably would be accurate to say that the provision requiring *six* girls to be educated who are to be *named* as in the will indicated, is a condition annexed to the gift as contradistinguished from a trust impressed upon the gift. The testatrix could have had no object in creating a trust, since without a trust precisely the same application will be made of the funds under the charter of the society as if there had been or could be a valid appropriation of them to these identical ends by means of a trust. If it were held that the words of the will attempted to create a trust which trust when created would be denounced as void for uncertainty, and which, therefore, would be called into existence only for the purpose of being considered as *not* in existence, a Court, ought to hesitate before putting such a construction on the words, if another construction which treats them as creating a condition instead of a trust and therefore which upholds the decedent's intention, is equally available and accurate. The whole scheme of the testamentary disposition contemplates imposing upon the beneficiary in declaratory language precisely the duty which its charter would have required it to perform with respect to this property had such declaratory language been omitted; save as to the *number* and *names* of the girls to be educated.

These exceptions constitute, we think, not evidence of an intention to establish a trust, but they denote simply a condition which has been annexed to the gift; and this condition relates not to the *vesting* of the property but to the *expenditure* of it. Much of the reasoning employed in the recent case of *Bennett* v. *Humane So.*, *supra*, is pertinent to this branch of the controversy. As that case was decided less than a year ago we do not deem it necessary to quote from it now.

What has been said in relation to the six Indian girls is also applicable to the remaining portion of the clause respecting the purchase of a building to be used for the education of girls in India. This is a gift to the Society, the property given to be used in the line of that Society's mission work. The use is a corporate use within the limits of its charter powers. In effect the testatrix said by her will to the Society: "You have power under your charter to educate females in far-off lands; in prosecuting this work you have authority to build or buy houses, as houses are necessary in carrying on schools. Now, I give you these funds—the proceeds of this residuary estate—to be used by you for these corporate purposes, but the building you purchase with the money I give you must be called the M. Adelaide Sherman Home." Can it be pretended that such a declaration would create a trust and a trust too that would be void because the objects of it are indefinite? Obviously it amounts merely to a gift for corporate uses coupled with the condition that the building when purchased or constructed should bear the benefactor's name. Without questioning any judgment heretofore pronounced by this Court we say that *this* will creates no trust because none was intended to be created; and the evidence that none was intended to be created, is furnished by the fact that the gift, whatever the language used in making it, was to a corporation capable of taking for its chartered purposes, some of which purposes are precisely those indicated in the will as the ones to which the funds were to be devoted. The gift is, therefore, not to the Society in trust, but to it for its legitimate corporate uses and is free from restrictions other than the conditions that have been indicated.

From these views it follows that there was error in granting the relief prayed in the bill filed by the decedent's collateral kindred, and the entire decree passed in the consolidated cases must be reversed. The cause will be remanded so that a new decree may be passed awarding to the Woman's Foreign Missionary Society of the Methodist Episcopal Church so much of the property disposed of by the residuary clause of Miss Sherman's will as may remain after her debts, bequests, funeral expenses and the costs of these two cases, both above and below, have been paid.

> *Decree in consolidated cases reversed, and record remanded that a new decree may be passed awarding to the Woman's Foreign Missionary Society of the Methodist Episcopal Church so much of the proceeds of the residuary estate as may remain after the debts, bequests and funeral charges of the testatrix, and the costs in these proceedings, both above and below, have been paid.*

(Decided March 8th, 1901.)