Roger V. Snow and Philip G. Clifford

*vs.*

The President and Trustees of Bowdoin College, et als.

Cumberland. Opinion, November 10, 1934.

196

*Snow and Snow,*
*Philip G. Clifford,* for complainants.
*Edward W. Wheeler,*
*Freeman & Freeman,*
*Robinson Verrill,*
*Sewall C. Strout,*
*Donald W. Philbrick,*
*Skelton & Mahon,* for defendants.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, HUDSON, JJ.

THAXTER, J. This is a bill in equity brought by the trustees of the will of Almira K. Hasty seeking a construction of two separate provisions of her will. The case is before us on report, on bill, answers and certain stipulations. The facts are not in dispute.

The testatrix died in 1912, and her will was duly admitted to probate in April of that year. Trustees, of whom the plaintiffs are the successors, qualified November 20, 1912. After disposing of a parcel of real estate she made bequests to certain friends, relatives and charities, and left by the eighth clause of her will the balance of her property in trust, the income of which was to be paid to certain enumerated persons during their lives, and on the death of the

last survivor the trustees were required to pay $1,000 each to the Home for Aged Men in Portland, to the Home for Aged Women in Portland, to the Portland Provident Association, and to the President and Trustees of Bowdoin College for a special purpose, and the balance of the fund to the President and Trustees of Bowdoin College in trust under the following terms and conditions:

"All the said property given and bequeathed by the terms of this will to said The President and Trustees of Bowdoin College, excepting said Hasty Scholarship Fund, shall be and constitute a permanent fund to be called the "Elihu Hasty Fund" to be controlled, invested and reinvested by it, the said The President and Trustees of Bowdoin College, who shall annually or oftener apply and dispose of the income thereof as follows: Two-thirds of said income of said fund in their hands from time to time and all accretions thereof are to be used for the purposes of the Medical School of Maine and the remaining one-third of said income is to be added yearly, or oftener if may be, to said fund, that is to say, said Elihu Hasty Fund, until said fund shall reach the sum of fifty thousand dollars, when the entire income thereof is to be expended and used for the purposes of the Medical School of Maine."

By the same clause of her will the trustees were directed, upon the decease of Almeda P. Sawyer, who happens to have been the last survivor of the beneficiaries having a life interest, to pay the sum of five hundred dollars to her son, Charles Llewellyn Sawyer. The specific terms of this bequest are as follows:

". . . upon the decease of said Almeda P. Sawyer, in case she survive me, I direct my trustees to pay her son, Charles Llewellyn Sawyer, the sum of five hundred dollars."

No provision was made for any gifts over on the lapse of any legacy.

The trustees ask the court for instructions as to the payment of this bequest, also as to the status of the bequest to the President and Trustees of Bowdoin College in trust for the purposes of the Medical School of Maine.

The question with respect to the Sawyer gift is whether the beneficiary had a vested interest on the death of the testatrix. Both the son and mother survived Mrs. Hasty but the son died before his mother. If his interest was contingent, it lapsed and became a part of Mrs. Hasty's estate; if it was vested, it is now a part of his estate.

The fulfillment of no condition precedent was prescribed to entitle the beneficiary to come into possession of this legacy. The time of payment of it was only postponed. That this time might not come until after his death does not make his interest a contingent one. It was vested, and the legacy should be paid to those persons who under such circumstances are found to be entitled to it. *Moulton* v. *Chapman*, 108 Me., 417, 81 A., 1007; *Bryant* v. *Plummer*, 111 Me., 511, 90 A., 171; *Davis* v. *McKown*, 131 Me., 203, 160 A., 458.

The disposition of the bequest for the purposes of the Medical School of Maine involves the application of the doctrine of *cy pres*.

This school was incorporated by an act of the legislature in 1820, and placed under the direction and control of the President and Trustees and Overseers of Bowdoin College. Its purpose was to instruct students in "medicine, anatomy, surgery, chemistry, mineralogy and botany." The school continued under the guidance of the college in accordance with its charter purposes until July 1, 1921, when, pursuant to a vote of the Trustees and Overseers of Bowdoin College, it ceased to function. Since that time no instruction in medical courses has been given through such school. The college has, however, provided instruction in chemistry, mineralogy, physics, botany, biology, anatomy, zoology, bacteriology, pathology and embryology. The number and range of these courses is sufficient to give a student a full four years of such medical preparatory work as is required for admission to medical schools.

The heirs of Mrs. Hasty now claim the fund in the hands of the trustees, which has not as yet been turned over to The President and Trustees of Bowdoin College. The college contends that it is entitled to it to hold in trust, and as the exact intent of the testatrix can not be carried out, that it should be applied *cy pres* either for support of the pre-medical courses at the college, or to provide scholarships for deserving students pursuing pre-medical courses

at the college or for graduates pursuing courses at approved medical schools in other states.

The equitable jurisdiction of the court under such circumstances as these is derived from its general power over the administration of trusts. Charitable trusts are objects of its peculiar regard. As these are not subject to the ordinary rules against perpetuities and may continue indefinitely, special problems arise with respect to their administration. However wise a testator may be, it is impossible for him to foresee all the vicissitudes, which may affect the object of his bounty through the passage of time and the happenings of chance. Thus, after the abolition of negro slavery in this country the Massachusetts courts were called on to decide what use should be made of a fund to be expended in creating a public sentiment against slavery. *Jackson* v. *Phillips,* 14 Allen, 539. After the extinction of the plague in England it became necessary to determine what should be done with a trust, the income of which was to be devoted to maintaining a hospital for the victims of that scourge. *Attorney General* v. *Craven,* 21 Beav., 392. Similar instances might be cited where courts of equity have been called on to intervene; and it is perfectly obvious in view of the advances which are being made in science and medicine that many other maladies, which afflict mankind, will be conquered. What shall become of endowments in such cases, when the specific objects of the donors shall have been fulfilled, will constitute problems for the courts for many years to come.

In dealing with this subject equity has a wide discretion. Its power is, however, limited to carrying out the intention of the donor of such a trust. As was said by the court in *Jackson* v. *Phillips,* supra, page 591, "The intention of the testator is the guide, or, in the phrase of Lord Coke, the lodestone, of the court."

That the intent of the donor can not be exactly carried out does not mean that there must be a failure of his general benevolent purpose. The rule has been many time expressed by this court that a fund for a charity will be administered *cy pres,* where there is a failure of the specific gift and a general charitable intent disclosed in the instrument creating the trust. *Bancroft et al* v. *Maine State Sanatorium Association et al,* 119 Me., 56, 109 A., 585; *Doyle* v. *Whalen,* 87 Me., 414, 32 A., 1022; *Brooks* v. *City of Belfast,* 90

Me., 318, 38 A., 222; *Allen* v. *Nasson Institute,* 107 Me., 120, 77 A., 638; *Lynch* v. *South Congregational Parish of Augusta,* 109 Me., 32, 82 A., 432.

The specific gift may fail from two causes, first it may become impossible to carry out the particular object which the donor had in mind, or secondly, the particular institution to which he made his gift may cease to exist. If, however, there is a general charitable purpose evident, the rights of the heirs at law are regarded as divested, and in either case equity will endeavor to carry out the intent of the benefactor as nearly as possible by directing the use of the fund to objects of a similar nature, or by designating some other institution with similar purposes to administer the trust. *American Academy of Arts and Sciences* v. *President and Fellows of Harvard College,* 12 Gray, 582.

That in all such instances the aim is to carry out the desires of the donor is apparent, when we study the cases where the court has refused to apply the fund *cy pres.* If it is clear that the creator of the trust had in mind the carrying out of one particular purpose which is impossible of fulfillment, as in *Gilman* v. *Burnett,* 116 Me., 382, 102 A., 108, and *Teele* v. *Bishop of Derry,* 168 Mass., 341, 47 N. E., 422, or if his dominant motive was to aid a particular institution which no longer exists, as in *Bancroft* v. *Maine State Sanatorium Association,* supra; *Merrill* v. *Hayden,* 86 Me., 133, 29 A., 949; and *Gladding* v. *Saint Matthew's Church,* 25 R. I., 628, 57 A., 860, the fund will revert to his estate or to his heirs at law.

In the case now before us we have nothing but the language of the will to indicate the purpose of the testatrix. There is no extrinsic evidence to suggest that her impelling desire was to aid that particular institution known as the Medical School of Maine. Rather it is apparent that she was concerned with its work, and wished to make a contribution to further the objects to which it was devoted. It was to her the medium by which her hope might be fulfilled that she could make a permanent contribution toward the education of those desiring to minister to the sick. To this end, after making provision for annuities for persons close to her, she left practically her entire estate in trust with no other thought in her mind than that it was to be forever devoted to a charitable use. The Medical School of Maine was a duly organized corporation

with power to hold property, and it is significant that this gift was made not to the school but to The President and Trustees of Bowdoin College as trustee. On this corporation was the responsibility of handling this fund, and of expending and using the income for the purposes of the Medical School of Maine. In attempting to determine her intent from the four corners of her will the particular phrasing which she used has a very potent meaning. The income is to be used not for the school but for the purposes of the school. She indicates an interest not so much in the school as in its work.

Similar language has been construed by a Surrogate's Court in New York. *In Re Mills' Will*, 200 N. Y. S., 701. In this case the court was called on to determine the disposition of a bequest made in the following terms: "I give and bequeath to the New York Medical College and Hospital for Women, Inc., under the laws of the State of New York, of 19 West 101st Street, New York City, the sum of five thousand ($5,000) dollars for the purpose of said institution." The legatee named ceased to function. The court directed the payment of the money to the county treasurer to await the outcome of pending litigation instituted to determine whether the designated legatee could resume the work for which it was chartered. If it could not do so, the surrogate held that it was a proper case for the application of the doctrine of *cy pres*. In referring to the specific language of the will the court said, page 703, "The gift in the instant case was to the objects of the corporation, not to itself."

In the case which we are considering it is not altogether clear from the record whether the Medical School of Maine has ceased to exist as a corporate entity or has merely ceased to function. In either event the aid of equity is properly sought to determine the proper disposition of this fund and its income. If it has become impossible to carry out the exact purpose of the donor, it is entirely immaterial whether such failure has been caused by the demise of the corporation designated by her as the vehicle to execute her desire or by its total incapacity to do what was expected of it. In neither case will equity permit the failure of her general charitable benefaction.

The President and Trustees of Bowdoin College, a corporation, is made trustee. It is a party to this bill in equity and by its an-

swer admits the allegations of it. In effect it is asking for instructions from the court as to the disposition of the income of this fund which it claims the right to administer. Such procedure is a proper one by a trustee, which is in doubt as to its duties.

One evident desire of the testatrix was that this fund should be permitted to accumulate until it should constitute an endowment of respectable size. She provided that one-third of the income should be added to the principal until the total should reach fifty thousand dollars. Under the changed conditions which now exist, it seems to the court that the purpose of the donor can be more nearly carried out by permitting the entire income to accumulate until the principal shall reach this sum.

There was apparent here a general charitable intent on the part of the testatrix, and the rights of the heirs at law to share in the fund have been divested. The present trustees should be directed to pay the balance in their hands to The President and Trustees of Bowdoin College, which shall from time to time add the income to the principal until the total sum shall reach the fifty thousand dollars, when application may be made to the court for instructions as to its disposition.

If in the interval conditions shall so change that a different use of the income shall more nearly approximate the purpose which the testatrix had in mind, the door of the court is always open to the trustee, The President and Trustees of Bowdoin College, to apply for a modification of such decree as may be entered.

> *Case remanded to sitting Justice for a decree in accordance with this opinion. Costs and reasonable counsel fees to be fixed by sitting Justice, paid by the trustees and charged in their probate account.*