STOCKTON ET AL. *v.* NORTHWESTERN BRANCH OF THE
WOMEN'S FOREIGN MISSIONARY SOCIETY OF THE
METHODIST EPISCOPAL CHURCH ET AL.

[No. 18,756. Filed April 25, 1956. Rehearing denied June
5, 1956. Transfer denied January 25, 1957.]

194

*Cope J. Hanley,* of Rensselaer, for appellants.

*Robert B. Wright,* of Rensselaer, for appellee Woman's Home Missionary Society of the Methodist Episcopal Church.

*Burke, James & Burke,* of Chicago, Illinois, and *Emmet M. LaRue,* of Rensselaer, for appellee Northwestern Branch of the Women's Foreign Missionary Society of the Methodist Episcopal Church.

KENDALL, J.—Northwestern Branch of the Womens Foreign Missionary Society of the Methodist Episcopal Church, plaintiff below, appellee herein, hereafter referred to as appellee Foreign, instituted this action for partition of real estate alleging that said appellee Foreign was the owner of an undivided three-fourths ($\frac{3}{4}$) interest thereof; that defendant appellee, the Woman's Home Missionary Society of the Methodist Episcopal Church, hereafter referred to as appellee Home, was the owner of an undivided one-fourth ($\frac{1}{4}$) interest of the real estate; that the fee simple titles were burdened with the payment of specific bequests to many legatees designated in the will of Mary J. W. Porter from whom the two appellees claimed they obtained title as a result of the residuary clause of her will. The appellants were among those named as legatees in Mrs. Porter's will. Jay W. Stockton owned an undivided interest in some of the real estate sought to be partitioned.

Certain defendants were defaulted. Appellant Jay W. Stockton filed answer in eight paragraphs. Not all the answers of appellant Stockton affected appellee Home. The propositions raised by appellants in their second, third, fourth, sixth and seventh paragraphs of answer are not argued in their briefs; neither is authority cited, and the same are waived.

Paragraph one was that of a denial; fifth, that the only title appellee Foreign had was by reason of a residuary clause in the will of Mary J. W. Porter, and that the phraseology used, "for China, India and Africa", was vague, uncertain, indefinite and void, by reason of which the real estate descended to decedent's husband, Charles H. Porter, and that by the residuary clause of his will, appellants were the owners of the appellees' claimed real estate; eighth, that the devise in the will of Mary J. W. Porter to the Foreign and Home Missionary Societies had failed, was incapable of fulfillment because the Societies had ceased to exist for the purposes for which they had been incorporated as a result of a union of the Methodist Episcopal Church, Methodist Episcopal Church, South, and the Methodist Episcopal Protestant Church.

Trial by court resulting in special finding of facts and conclusions of law and judgment rendered thereon favoring appellee Foreign; that it was the owner in fee simple of an undivided three-fourths ($\frac{3}{4}$) interest and the appellee Home was the owner of an undivided one-fourth ($\frac{1}{4}$) interest of the farm land and certain lots in Rensselaer, Indiana; that appellee Foreign was the owner in fee simple of an undivided three-eights ($\frac{3}{8}$) interest and appellee Home, an undivided one-eighth ($\frac{1}{8}$) interest; that appellant J. W. Stockton was the owner in fee simple of an undivided four-eighths (4/8) interest of certain lots in Rensselaer. A commissioner was appointed to sell and make disposition accordingly. Appellants filed written request for additional findings of fact, which were denied, which, in our opinion, did not constitute any error.

It is apparent that whether the appellees as residuary devisees under Mrs. Porter's will are entitled to the real estate depends upon whether the remainder devised was

contingent or vested at the date of the death of the testatrix.

Motion for new trial contended that the findings of the court are not sustained by sufficient evidence and are contrary to law; that the decision is not sustained by sufficient evidence and is contrary to law; error of court in its failure to adopt additional finding of fact. Assignment of errors are the overruling of the new-trial motion and error in the court's conclusions of law one to ten, inclusive.

Mary J. W. Porter executed her will June 17, 1936, in which provision was made for payment of debts, a bequest to her husband of income from bonds, also for personal property excepting bonds, a life estate to her husband in real estate; Ninety Thousand ($90,000.00) Dollars of special bequests and which will contained the following residuary clause:

"I will, bequest and devise the remainder of all my United States Treasury bonds and all of my real estate, subject to the life estate of my husband, Charles H. Porter, and subject to the payment of the foregoing legacies, three fourths (¾) thereof to the Northwestern Branch of the Women's Foreign Missionary Society to be used for China, India and Africa; and the other one-fourth (¼) to the National Society of the Woman's Home Missionary Society of the Methodist Episcopal Church."

On August 17, 1938, Mrs. Porter died, her husband being the only heir. The will was probated and estate closed November 8, 1939. On May 10, 1939, there was a union of The Methodist Episcopal Church, The Methodist Episcopal Church, South, and The Methodist Protestant Church, whereby they united under the name of "The Methodist Church". The appellee Foreign was incorporated in 1898 for the purpose of carrying forward the objects of the Women's Foreign Missionary

Society of The Methodist Episcopal Church. In 1940, an amendment was filed as to the objects of said appellee in that it was to carry forward the objects of the Women's Division of Christian Service of the Board of Missions and Church Extension of The Methodist Church. The appellee Home was incorporated in Ohio in 1884 for home missionary purposes in the United States, and to cooperate with other societies of The Methodist Episcopal Church in educational and missionary work. In 1951, appellee Home was admitted to do business in this state for the purpose of acquiring title to real estate and to carry forward objects of the Women's Division of Christian Service of the Board of Missions and Church Extension of The Methodist Church.

We are also presented with the will of Charles H. Porter, dated August 19, 1948. Item X is:

"I hereby will, devise and bequeath unto Jay W. Stockton, Almira Stockton Phegley, Cordelia Stockton, John Stockton and William Stockton, all the remainder and the rest and residue of my personal property, to have and to hold the same in equal shares."

Charles H. Porter died February 9, 1949, and his estate is still pending.

From these facts, appellants maintain that appellee Foreign did not receive an absolute devise by the residuary clause of Mrs. Porter's will; that the will attempted to devise the three-fourths ($\frac{3}{4}$) interest of the remainder of the real estate, and that the phraseology used, "to be used for China, India and Africa", could do no more than create a trustee of said appellee; that as to both appellees, Foreign and Home Missionary Societies, there was no vesting of title and that as to the fee simple title of the real estate of Mrs. Porter, she died intestate, which land was inherited by her husband

who devised it to these appellants by the residuary clause of his will. The appellees retort that in view of the respective purposes of each of appellee corporations, the evidence of the testatrix's knowledge of the purposes of each of said corporations and the language used therein warranted the court in finding that the same constituted a gift absolute and vested immediately upon the death of the testatrix.

The evidence revealed that the testatrix was interested in missions, was acquainted with the type of work performed by appellees, which was of such probative value that the trial court was warranted in saying that the testatrix gave to the institutions which she thought would carry out her desires, and, accordingly, therefore, left the devise without limiting conditions.

To state it another way, appellants contend:

"(1)   It is impossible to carry out the exact purposes of Mary J. W. Porter because the Methodist Episcopal Church is not in existence and the intended devise to plaintiff-appellee fails.
"(2)   If she intended to give this portion to plaintiff-appellee, then the situation is presented that this society has been succeeded in the purposes for which it was organized by a new society called 'Women's Division of Christian Service of the Board of Missions of Church Extensions of the Methodist Church'."

and in support thereof, cite the cases of *Duncan* v. *Higgins* (1942), 129 Conn. 136; 26 Atl. 2d, 849; *Snow and Clifford* v. *Bowdoin College* (1934), 133 Maine 195; 175 Atl. 268; *First Universalist Soc., Bath* v. *Swett et al.* (1952), 148 Maine 142; 90 Atl. 2d, 812; *Murphy, et al.* v. *McBride et al.* (1925), 14 Del. Chan. 457; 130 Atl. 283.

It seems to us that such contentions are inconsistent. At one time they assert that the testatrix, by the use of

certain words in the residuary clause, attempts to create a charitable trust; while, on the other hand, they argue with the same degree of earnestness that such a trust as was attempted to be created is void for uncertainty. There is a difference between an absolute devise and one in trust to a charitable institution. In the former, the property becomes an asset of the corporation to be used in such manner as the corporation deemed best, while in the latter, the property is held by the corporation, not as its own, but in the capacity as a trustee, or as an instrumentality of the settlor in carrying out the directions.

Appellants endeavor to make much of the fact that by the union of what is now known as The Methodist Church prohibits these appellees from benefiting by the devises herein made on the basis that they are not now in existence. Such argument is without merit, for the evidence is such that the court was warranted in finding that the purposes of each appellee corporation are substantially incorporated into the purposes of The Methodist Church; however, if there be merit to appellants' contention, certainly it is diminished by the uncontroverted evidence that the union did not occur until at least eight (8) months after the death of Mrs. Porter and the probate of her will.

We view the devise to the appellees, being charitable, non-profit corporations which have for their purposes missionary work in foreign fields and for the United States and territories, as being a gift absolute without restrictions as to use. The testatrix did not designate a particular use or condition to which the devises were to be applied within the corporate purposes of appellees, such as education, either for boys or girls, construction purposes, hospitals, health or sanitation, or the many other purposes which this court can take judicial knowledge of what such societies

as appellees are concerned with in carrying out the purposes of their respective corporations, but, to the contrary, left the devises to be used for the general purposes, that of missionary work.

We cannot see under all the facts and evidence how it could be interpreted that a trust was created or that it was the intention of the testatrix to so create a trust. *Woman's Foreign Miss. Soc.* v. *Mitchell* (1901), 93 Md. 199; 48 Atl. 737.

The evidence warranted the trial court in finding that no trust was intended to be created is furnished by the fact that the devise, whatever the language used in making it, was to a corporation capable of receiving such devise for its chartered purposes, some of which purposes are precisely those indicated in the will. The devise is, therefore, not to either of the appellees in trust, but to it for its legitimate corporate uses, there being no indication of any restrictions.

In the *Matter of Griffin* (1901), 167 N. Y. 71; 60 N. E. 284, the residuary clause there involved is as follows:

> "Upon the death of my said wife, I give and bequeath, grant and devise to the Round Lake Association . . . all the rest, residue and remainder of my estate real and personal . . . the amount so hereby given to said association to be prudently invested by it, and the income and profits arising therefrom to be devoted and applied by said association to the support and maintenance of the school at said Round Lake known as the Round Lake Summer Institute."

It was contended there that a trust was created, but the court held to the contrary and that it was a gift absolute in which the court said:

> ". . . in other words he intended to give his property to the Round Lake Association, to maintain its own school, not as trustee for the benefit of another, though doubtless it may use the other for

the purpose so long as the parties contract therefor. Such a gift, though the corporation may be instructed to maintain the principal intact, and use the income only for a specific purpose, does not create a trust."

This case was quoted with approval by this court in *Ebenezer's Old P. H.* v. *So. Bend Old P. H.* (1943), 113 Ind. App. 382; 48 N. E. 2d, 851. In that case, the clause construed by this court was as follows:

"In the event there is an institution in the city of South Bend at the time of my death or within two years after the time of my death, which has for its purpose of its existence the maintenance of a home for old people irrespective of their religious beliefs upon at least a partial charitable basis then I desire and direct my said executor to turn all the rest and residue of the property of which I may die seized to said institution."

There it was claimed that a trust was created.

Judge Crumpacker, speaking for this court, said:

"In their brief the appellants cite many cases from this jurisdiction and elsewhere treating of charitable trusts and circumstances under which the *corpus* thereof will revert for nonuser. These cases would all be influential in our consideration of this appeal if it could be said that a charitable trust is here involved. . . . It is apparent to us that in the instant case the testator intended to give the residue of his estate to some institution in South Bend which had for its purpose the maintenance of a home for old people to be used by such institution in the carrying out of *its* purposes and not in trust for another. The charity in which such an institution was engaged appealed to the testator and gave to it the residue of his estate to aid in the carrying out of its purposes without other restriction or limitation. Such a bequest has none of the characteristics of a trust and amounts to nothing more than a gift to a charitable institution in whose purposes and objects he was sympathetic."

With these cases as a guide, we cannot say that the devise of the testatrix has any of the characteristics of a trust and amounts to any more than a gift to a charitable institution in whose purposes she was sympathetic. See *Grear* v. *Sifford* (1937), 289 Ill. App. 450; 7 N. E. 2d 371.

In Page on Wills, Second Edition, Vol. 2, §1044, it is said:

"A gift to a corporation or organization to enable it to carry out some or all of the purposes for which it was formed does not create a trust."

Doubtless the reasons underlying the rule is that the purpose for which the property is left, being a part of the church and a department thereof, that both the legal and equitable title vested in the church. This being true, the equitable title merged in the legal title. We believe that the phraseology complained of by appellants simply explained testatrix's motives and purposes in making the devises to the appellee and that in this sense are precatory words only and not sufficient within themselves as creating a trust. *In Re Havesgaard's Estate* (1931), 59 S. D. 26; 238 N. W. 131.

In the case of *In re Lowe's Estate* (1946), (T. D. 1947) 117 Ind. App. 554; 70 N. E. 2d, 187, this court said:

"It is well established that legacies to the uses of charity are to be construed by the most liberal rules that the nature of each case will permit, and will not be declared void if they can by any possibility consistent with the law be held valid."

Appellants cite many cases in support of their contentions. Upon search, we find them to be cases in which trusts were actually created. We believe it to be a general and sound rule that where the trust construction is avoided, the gift becomes an absolute, outright gift and

the objections as to indefiniteness of beneficiaries, vagueness of purpose or lack of principle loses all its force.

Appellants' contention that the residuary clause is void because it is impossible to carry out the exact purposes of the testatrix is without merit. We have previously dealt with the purposes of the appellees' corporations in that they were formed for the purpose of missionary work in foreign fields; therefore, there is no question of impossibility before us to carry out Mrs. Porter's intentions or purposes when we have determined that the devise is absolute and not in trust and further when such a devise was made to corporations which had for its very purposes those mentioned by the testatrix in making the gift. The appellees are functioning corporations as of this date. It would seem that appellants by such attack contend that the appellee corporations will not use said property or the proceeds therefrom for a rightful purpose. Such contention is premature for there is nothing in the record before us to show or even intimate an attempt by either appellee to use the property for any other purpose than that of its own.

There was evidence that the declaration of the union of the churches as taken from the doctrine and discipline of the Methodist Church, 1948, is as follows:

"The Methodist Episcopal Church, The Methodist Episcopal Church, South, and The Methodist Protestant Church had their common origin in the organization of the Methodist Episcopal Church in America in 1784 A.D. and have ever held, adhered to and preserved a common belief, spirit and purpose, as expressed in their common Articles of Religion."

This would indicate that the articles of religion of the Methodist Episcopal Church and the articles of religion of the Methodist Church are the same except the articles

of sanctification which were not voted upon at the uniting conference; however, it was placed in the Methodist discipline for information, which discipline provides for a Board of Missions and Church Extension of the Methodist Church with its administrative divisions thereunder named as follows:

A. Division of Foreign Missions;
B. Division of Home Mission and Church Extensions;
C. The Women's Division of Christian Service.

The cases of *Duncan* v. *Higgins, supra; Snow and Clifford* v. *Bowdoin College, supra; First Universalist Soc., Bath* v. *Swett, et al., supra; Murphy, et al.* ▮ v. *McBride, et al.,* which support appellants' contentions, involve situations where the gifts were outright to charitable institutions which ceased to exist prior to the death of the testator so that actually the gift failed, unless it could be sustained under the *cy pres* doctrine. They generally hold that the *cy pres* doctrine cannot be invoked where there is an outright gift to a specifically-named charitable institution, which law is applicable in this state. *In re Lowe's Estate, supra.*

It is pointed out in the Snow case, *supra,* that in a case involving a trust where the donee ceases to exist prior to the vesting of the gift, thus working a failure of the gift, the testator had stated only a particular charitable purpose, that, under those conditions, the *cy pres* doctrine is not applicable. Appellants do not claim that. To the contrary, they claim that the exact purposes of the testatrix's will cannot be carried out because The Methodist Episcopal Church is not in existence as such. The purposes of Mrs. Porter's will, as disclosed thereby, and the evidence applicable thereto were not for a particular purpose as designated in the Snow case, *supra,* but was for a general charitable purpose, to-wit: Missionary work, which was within the scope of the objects of appellees.

The original articles of incorporation of appellee Home is as follows:

"The Purposes and Objects of the corporation shall be to enlist and organize Christian Women to labor on behalf of needy and destitute women and children in all parts of our Country, without distinction of race, and to cooperate with the other Societies and Agencies of the Methodist Episcopal Church in Educational and Missionary work; to employ women to work in destitute localities; to instruct the ignorant and unfortunate in the practice of industry and economy, and in the principles of sanitary law and morality, and to establish schools and evangelistic agencies throughout the *United States* and Territories."

There is nothing in the record that reasonable inference can be drawn otherwise, that the purpose of said appellee, that of home missionary work has been changed by the uniting of the various churches. The certificate of admission to do business in this state is in part as follows:

". . . for the purpose of representing and carrying forward the objects of the Woman's Division of Christian Service of the Board of Missions and Church Extension of the Methodist Church, and for the purpose of promoting the cause of Christian missions and religious education of the State of Indiana and elsewhere."

The purpose of the corporation to do home missionary work in the United States and Territories actually has not been changed, except for a difference in the wording, and the objects of the Woman's Division of Christian Service of the Board of Missions and Church Extension of the Methodist Church include both foreign missions and home missions.

In appellant's contentions, as herein enumerated, they further contend that the appellee corporations gather funds and act as a conduit to a new division of the new

church, and, then again, the gift fails. They cite in support of such contention *Bancroft* v. *Sanatorium Ass'n.* (1920), 119 Me. 56; 109 Atl. 585; *Pennsylvania Co. Etc.* v. *Bd. of Governors* (1951), 79 R. I. 74; 83 Atl. 2d, 881.

The Bancroft case, *supra,* is not authority for appellants' proposition for that is a case where the donee of a charitable trust failed and there was an attempt to transfer the trust income to which it had no assignable interest to another charitable trust. Obviously, it could not act as a conduit. The facts in the Bancroft case, *supra,* are most distinguishable from those presented here, as the devises are absolute and outright gifts vesting a remainder interest immediately upon the death of the testatrix, the appellees have the absolute right of control upon her death, they being the owners, and, under such conditions, could not be acting as mere conduits.

In the *Pennsylvania Co. Etc.* v. *Bd. of Governors* case, *supra,* the gifts were for specific purposes upon express conditions so that where they could not be carried out, the gift failed, preventing the hospital corporations from directing the applications of the gift to the minister of health or successor boards. Actually, there is no showing or evidence in this case that the appellee corporations are not functioning; neither is there evidence that they will not apply the gifts to their proper purpose and for the purposes that the testatrix had in mind. *Ebenezer's Old P. H.* v. *So. Bend Old P. H., supra.*

It is significant, in view of appellants' contentions, to examine the other clauses and items of the will of Mrs. Porter. Therein she made provisions for debts and funeral expenses from the sale of United States Treasury bonds, she bequeathed the income from treasury bonds, not used, to her husband for life, she gave personal property to her husband, absolutely, except treasury bonds; she gave her husband

a life estate in all real estate and provided for numerous individual bequests. One of the cardinal rules of construction of wills is that the intention of the testator, if possible, be gathered from the entire will and that the law favors an early vesting of interest. In Gavit, Indiana Law, Future Interests, Wills, Descent, §44, p. 92, the rule is stated:

> "The substance of this rule is that in case of doubt a remainder is to be construed as vested rather than contingent, and a condition to be subsequent and not precedent."

Appellants cite the case of *Smith* v. *Sweetser* (1927), 19 F. 2d, 974, in which the Circuit Court of Appeals, Seventh Circuit, followed the law as announced by Indiana courts. The appellant in the Smith case, *supra,* argued that the residuary legatee received only a contingent remainder interest and that it lapsed because he predeceased the widow of the testator; that the interest of George Sweetser was contingent upon the prior payment of all legacies and bequests and the ascertainment of the existence of a surplusage, which is similar to appellants' contentions in this case. The court therein said:

> "Whether a bequest is vested or contingent is primarily to be determined by the intent of the testator, as manifested by his will. While a contingent interest, created by apt words, will be upheld by this court (Alsman v. Walters, 184 Ind. 565, 106 N. E. 879, 111 N. E. 921), testamentary grants will be treated as vested unless the testator's intention to the contrary appears . . ."

Under these authorities, the remainder interest in real estate devised to the appellees in the residuary clause of Mrs. Porter's will can be none other than a vested remainder, vesting upon her death which was prior to the union of the churches. What the testatrix

did in the provisions of her will was to postpone the enjoyment of the possession of the property bequeathed. Lastly, appellant Stockton maintains that he takes under the will of Charles H. Porter. This is a partition suit involving ownership and title of real estate. For appellants to be correct in their contention, it must first be established that they own an interest therein before they have any right to raise the other questions which have been discussed. *Ebenezer's Old P. H.* v. *So. Bend Old P. H., supra.* In determining this particular question, we are again confronted with a construction of the will of Charles H. Porter. The appellants were proper parties to this action because they had certain legacies which they were entitled to have paid. Appellant Jay W. Stockton was a necessary party, for undoubtedly, he was the owner of an undivided interest in common with the named residuary legatees. Before appellant Stockton, or any other appellant, can assert an interest, it must be established that they received it under the will of Mr. Porter.

Item IX of Charles H. Porter's will must likewise be considered in determining the intent of him to dispose, or as to whether he was intending to dispose of personal property or real estate, which Item is:

> "At the time of my death I direct that my executor shall reduce to cash all of my bonds, my automobile, all grains in storage, and all growing crops on the various farms in which I now have a life estate, and such funds, together with such cash as I may have on hand, subject to the payment of the specific bequests hereinabove set out, shall be equally divided between the following named churches of Rensselaer, Indiana, to-wit: St. Augustine Catholic Church; Methodist Church of Rensselaer, Indiana; Presbyterian Church of Rensselaer, Indiana; Christian Church of Rensselaer, Indiana; and Bethany Gospel Mission of Rensselaer, Indiana."

We believe it is clear that Item IX specifically demon-

strates Mr. Porter's awareness of the fact that he was only the owner of a lifetime interest in the real estate and indicated by his will what should be done with his interest therein when he directed the executor to reduce to cash the growing crops on the various farms in which he had a life estate and proceeded then to make arrangements for the division of cash. There is no item of his will that can be construed as bequeathing to the appellants anything to include the real estate which was owned and devised by Mary J. W. Porter.

We construe Item X of Mr. Porter's will as devising a specific legacy to appellants. It is not a general residuary legacy wherein the testator disposed of, "all remaining of my estate", "all my estate", "all my property", "any real estate left", or by other expressions and intentions to dispose of his entire estate remaining undisposed of. In fact, there is a specific legacy of personal property only, being general in character. He speaks of, "all the remainder and the rest and residue of my personal property"; the words, "remainder", "rest", and "residue" refer to personal property and not realty.

We believe that since Mr. Porter's will contains express limitation of the kind of property disposed of that this court could not construe it to be a general residuary clause.

In the case of *Grimes' Executors* v. *Harmon and Others* (1871), 35 Ind. 198; 9 Am. Rep. 690, cited by appellants, the court said:

"It is a well settled rule of construction, that all the parts of a will are to be construed together and in relation to each other, and so as, if possible, to form one consistent whole, and what words and limitations may be transposed, supplied or rejected, where warranted by the context or the general scheme of the will, but not merely on a conjectural hypothesis of the testator's intention, however reasonable, in opposition to the plain and obvious sense of the language of the instrument. 1 Redf. on Wills,

430. It is our duty to place such a construction upon the will as will sustain and uphold it in all its parts, if it can be done consistently with the established rules of construction of the law." See also *Ridgeway et al.* v. *Lanphear et al.* (1884), 99 Ind. 251.

We find no evidence that Mr. Porter owned any other real estate than that mentioned in Item V of his will. It is a fair assumption which the trial court was entitled to infer that Charles H. Porter who took a life estate in all the real estate in question under the will of his pre-deceased wife, thereafter never questioned the right of the appellees to take as a result of the residuary devise and did not consider that he owned, or was entitled to the fee simple interest in said real estate, and that when he disposed of his property by will, he meant what he said in the disposition he made of the remaining personal property. Where a testator, such as Mr. Porter, by clear and plain language gives all the rest and residue of personal property to certain devisees, such clause does not include a disposition of real estate. *Milligan* v. *Greeneville College* (1927), 156 Tenn. 495; 2 S. W. 2d 90; *Swan's Estate* (1913), 238 Pa. 430; 86 Atl. 274.

With the most liberal rules of construction of Mr. Porter's will, the appellants did not acquire any interest in the real estate by the terms thereof and actually have no interest in the real estate now being litigated. We cannot see that there is any intestacy in the case of either will.

We conclude, therefore, that the trial court did not err in its findings and conclusions of law upon which judgment was rendered; that there was sufficient evidence of probative value warranting the court in finding that by the terms of Mrs. Porter's will, the same constituted an absolute and outright gift by way of remainder to each of the appellees, following the life estate

of her husband, the title of which vested immediately upon the death of the testatrix.

Judgment affirmed.

NOTE.—Reported in 133 N. E. 2d 875.