Charles P. Curtis, administrator *de bonis non* with the will annexed, *vs.* The First Church in Charlestown & others.

Suffolk. November 17, 1933. — December 29, 1933.

Present: Rugg, C.J., Crosby, Pierce, Donahue, & Lummus, JJ.

*Devise and Legacy*, Identity of legatee. *Voluntary Association*, Incorporation. *Religious Association. Church. Parish.*

An unincorporated church organization of the Congregational denomination was affiliated with a parish corporation which had been incorporated in 1803; religious activities were carried on by the unincorporated church organization and the title to the "temporalities" used by it in those activities was in the parish corporation. A woman, who was a member of and deeply interested in the spiritual work of the church and was a member of the parish, made a will in 1895 in which she directed in several paragraphs that at the termination of certain trusts one fourth of the principal thereof should be distributed to an organization which she designated in the different paragraphs by various names, each of which contained the name "Church" and was a name by which the unincorporated church organization commonly was known. Some of such names also included the word "Parish." The correct name of the parish corporation was not mentioned in the will. The will also contained a provision that, of the sum thus given to "said First Parish Church," the income only was "to be used for paying its pastor's salary and for ringing the chime of bells on said church, in such proportions as its church officers may determine." Upon an appeal from a decree upon a petition for instructions, it was *held*, that the words of the will indicated that the unincorporated church, rather than the parish corporation, was predominant in the mind of the testatrix and that the will showed her intention to make the church organization rather than the parish corporation the object of her bounty.

The testatrix above mentioned died in 1904. A further provision in the will was that, "in case said church shall be discontinued or cease to maintain public worship as a separate and distinct organization, then said sums shall vest in and be paid to" a certain academy. In 1913 the unincorporated church organization was incorporated by special statute; all its property was vested in the new corporation, which was authorized to hold property to a specified amount and to convey all its property to a corporation named the Congregational Church Union of Boston and Vicinity upon stated trusts; the parish corporation was authorized to convey its property to the new corporation and its members to become members of the new corporation; and the new corpora-

tion was permitted to accept the property and members of another religious corporation of the same denomination, which thereupon should become "merged" in the new corporation. Such merger was effected and thereafter church services of the new corporation were carried on in the edifice formerly occupied by the other religious corporation so merged, which was in the same locality as the edifice formerly used by the unincorporated church. The parish corporation, in accordance with a final decree in a suit in equity in 1927 conveyed the "temporalities" to the Congregational Church Union of Boston and Vicinity in trust to be used for the same purposes as the parish corporation previously had held them or upon further trusts in the event of changed circumstances. The new corporation continued its activities as before but in the new location. *Held,* that

(1) By the incorporation the church organization named in the will was not "discontinued";

(2) The addition to the new corporation of the members and property of the neighboring church corporation did not effect such a discontinuance;

(3) The fact that the new corporation used a different edifice from that formerly used by the unincorporated church did not show such discontinuance;

(4) The new church corporation, and not the academy, was entitled to the share designated to be given to the church organization in the will.

PETITION for instructions, filed in the Probate Court for the county of Suffolk on May 16, 1932, by the administrator with the will annexed of the estate not already administered of Mary D. Balfour, late of Boston.

The petition was heard by *Dolan,* J. The evidence was duly reported. The will in question was made in 1895. Other material facts appearing in the pleadings and the evidence are described in the opinion.

A final decree was entered, among other things directing that the residue be distributed among Perkins Institution and Massachusetts School for the Blind, Radcliffe College, Association of the House of the Good Samaritan, and Abbot Academy. The First Church in Charlestown alone appealed.

*R. C. Curtis,* stated the case.

*E. V. Grabill,* for The First Church in Charlestown, submitted a brief.

*F. F. Miller,* for Abbot Academy.

RUGG, C.J. This is a petition for instructions brought by the administrator with the will annexed of the estate of

Mary D. Balfour, late of Boston.  The testatrix died and her will was duly allowed in 1904.  The residue of her estate was given to trustees upon trusts which have recently terminated.  In the events which have come to pass, the remainder is to be divided among four institutions.  The controversy relates to the institution entitled to receive one of these shares.  One of these institutions was variously described in the residuary clause as "The First Church in Charlestown," "The First Parish Church in Charlestown," "the said First Parish Church in Charlestown," "said First Parish Church in Charlestown" and "said First Parish Church."  By an earlier clause of the will (being paragraph 4) gifts were made to "the First Parish Church in Harvard Square, Charlestown," of the testatrix's "pew in said church" and of two sums of money, one to be divided equally between the Sunday School and a missionary society "connected with said church."

The particular clause of the will as to which instructions are required is in paragraph 15 and is of the tenor following: "Of all sums herein given from the Trust Fund to said First Parish Church, the income only thereof is to be used for paying its pastor's salary and for ringing the chime of bells on said church, in such proportions as its church officers may determine, and in case said church shall be discontinued or cease to maintain public worship as a separate and distinct organization, then said sums shall vest in and be paid to the Abbots Academy at Andover, Massachusetts."

The issue is whether upon the record this share in the residue is payable to The First Church in Charlestown or to Abbot Academy of Andover.

The case was heard on documentary evidence and oral testimony, all reported so far as material to the issues here raised.  *Cook* v. *Howe,* 280 Mass. 325, 327.  The trial judge entered a final decree instructing the petitioner to pay the share to Abbot Academy of Andover.  He made no findings of material facts.  The First Church in Charlestown appealed from the final decree.

The entry of the decree imported the finding of all ma-

terial facts permissible on the evidence conducing to that conclusion. The appeal brings before us for decision questions of fact as well as of law presented on the record. It is the duty of this court to decide the case upon its own judgment, but findings based on oral testimony will not be reversed unless plainly wrong. *Lindsey* v. *Bird,* 193 Mass. 200. *Callan* v. *Callan,* 280 Mass. 37, 39.

There appears to be not much dispute concerning the basic facts. It is alleged in the bill and admitted by the answer of the appellant and not contradicted by evidence in substance as follows: At the time of the execution of the will and of the death of the testatrix, there was in existence holding services and diligently engaged in religious activities in Harvard Square, in that part of Boston called Charlestown, a voluntary unincorporated religious association variously and commonly known as the First Church, the First Church of Christ, the First Parish Church in Charlestown, the First Parish Church in Harvard Square, and The First Church in Charlestown, which was affiliated with The First Parish in the Town of Charlestown, a corporation incorporated by an act passed on March 5, 1803, (St. 1802, c. 107, Vol. 3 Massachusetts Special Laws, page 156). All religious activities were carried on by said voluntary religious association; but in a dual form of organization then commonly used in Congregational churches, the title to the "temporalities" used by the voluntary religious association in such religious activities was in the corporate body. The deed of the pew mentioned in paragraph 4 of the will was from The First Parish in Charlestown in the year 1853. By St. 1913, c. 84, the voluntary religious association became incorporated under the name of the First Church in Charlestown, and The Winthrop Church, a religious corporation, was absorbed in said corporation and conveyed all its property to said corporation. Since then The First Church in Charlestown, which was the church in which the testatrix was active, has carried on its religious services and activities in an edifice formerly owned by the said Winthrop Church. That edifice, although on a different street, is in the same general locality as was the

edifice in which the said First Church in Charlestown formerly worshipped and carried on its work. In accordance with a final decree dated March 18, 1927, entered in a suit in equity, entitled First Parish in the Town of Charlestown *vs.* Attorney General & Others, the corporation, The First Parish in the Town of Charlestown, conveyed to the Congregational Church Union of Boston and Vicinity all the said "temporalities" which previously it had held for the purposes of the church activities of the First Church in Charlestown, the said Congregational Church Union to hold the same in trust in substance for the same purposes relative to the "religious services and related religious or otherwise charitable activities of the First Church in Charlestown" as the corporation, The First Parish in the Town of Charlestown, previously had held them, or upon further trusts in the event of changed circumstances. Since that date the said "temporalities" conveyed have been thus administered, and the said First Church in Charlestown has continued its activities as before but in the new location.

The voluntary association or organization will hereafter be termed the church and the corporation established by St. 1802, c. 107, the parish. The parish held the title to the edifice in Harvard Square, Charlestown, in which the church held its services. The parish conducted the business of the dual organization. It paid the salary of the minister and paid for ringing the chimes. *Baker* v. *Fales*, 16 Mass. 488. *Stebbins* v. *Jennings*, 10 Pick. 172. The testatrix was a member both of the church and of the parish, was active in both, and was deeply interested in the spiritual side of their work.

The present appellant was incorporated by St. 1913, c. 84, entitled "An Act to unite The Winthrop Church with The First Parish in the Town of Charlestown and the Church affiliated therewith and for other purposes." By § 1 of this act the church, being the voluntary religious association theretofore connected with the parish, was made a corporation under the name of the First Church in Charlestown, with all the rights and powers theretofore enjoyed by

the preëxisting church. All the church members became members of the new corporation. By § 2, all property and property rights held or owned by the church or by its deacons was vested in the new corporation. By § 3, the new corporation was authorized to hold property to a specified amount and to convey all its property to the Congregational Church Union of Boston and Vicinity upon stated trusts. By § 4, the parish, that is to say, the corporation established by St. 1802, c. 107, was authorized to convey its property to the new corporation and its members to become members of the new corporation. By § 5, The Winthrop Church, a religious corporation, was authorized to convey all its property to the new corporation. Other sections of St. 1913, c. 84, have no relevancy to the present controversy.

The new corporation, which is the respondent first named in this petition, was duly formed and organized by appropriate votes and the various transfers of property authorized by the statute were made to it, except that the parish did not turn its property over to it but in accordance with the court decree of 1927 turned its property over to the Congregational Church Union of Boston and Vicinity. The latter corporation uses the same in its discretion and as required by specific trusts for the benefit of the new corporation.

The intent of the testatrix as to the ecclesiastical organization, whether the church or the parish, designated as the object of her benefaction must be determined. It does not appear that the church had any established name as a voluntary unincorporated association. It was commonly called by various names. One of these names may be regarded as important as another. It is to be observed that in the residuary clause the testatrix used one of the names by which the church, being the unincorporated voluntary organization, was commonly known, namely, The First Church in Charlestown. All the other forms of description of the beneficiary in the will include the word "church." Nowhere in the will is mentioned the correct name of the parish, The First Parish in the Town of Charlestown, being the corporation established by St. 1802, c. 107. Wherever

the word "parish" is used in the will, it is coupled with the word "church." The church was competent to receive such legacies, both at the time of the execution of the will in 1895, Pub. Sts. c. 39, §§ 1 and 10, as amended by St. 1884, c. 78, and at the time of her death in 1904, R. L. c. 37, §§ 1, 3, now G. L. (Ter. Ed.) c. 68, §§ 1, 3. *Chase* v. *Dickey,* 212 Mass. 555, 560–561. There is nothing in the reported evidence tending to show that the testatrix preferred either the church or the parish above the other. She was a member of both. Although it might be inferred that one so deeply interested as was the testatrix in the spiritual work of the church, in view of some of the controversies between church and parish in the history of the Commonwealth, would have deeper concern for the church, that factor does not seem entitled to great weight. It is significant, however, that the name of the parish, which was exact and statutory, does not appear in the will. The words of the will indicate that the church was predominant in the mind of the testatrix, rather than the parish. In controversies as to the legatee entitled to a benefaction, the circumstance, that the correct name of one among several claimants is used, is generally decisive as to the one intended. This usually overcomes testimony indicating greater interest in another on the part of the testator. *Tucker* v. *Seaman's Aid Society,* 7 Met. 188. *Mahoney* v. *Grainger,* 283 Mass. 189, 191–192. *National Society for the Prevention of Cruelty to Children* v. *Scottish National Society for the Prevention of Cruelty to Children,* [1915] A. C. 207. Compare *Faulkner* v. *National Sailors' Home,* 155 Mass. 458. In this connection it is not without weight that the testatrix directed that the "church officers" should determine the proportions of the income of the gift to be devoted to payment of the pastor's salary and of the expenses of ringing the chimes. The officers of the parish were to have no voice in that matter. We are of opinion that the will shows an intention to make the church rather than the parish the object of the testatrix's bounty.

It remains to determine whether the church has been "discontinued" or has ceased "to maintain public worship

as a separate and distinct organization" within the meaning of those testamentary words. The provisions of St. 1913, c. 84, § 1, are explicit to the effect that "the voluntary religious association" known as the church under several names is created a corporation under the name of the First Church in Charlestown. It is plain, therefore, that the church has not been discontinued. Its permanence and vitality have been assured as far as possible by its being made a corporation. As created, it was a separate and distinct organization. It comprehended the preëxisting unincorporated voluntary organization. All the property of the latter vested in the new corporation.

Incorporation of private trustees is a not uncommon method of perpetuating the administration of a trust unless contrary to the terms of the foundation. *Boston* v. *Curley*, 276 Mass. 549, 557, and cases collected. A change in the persons to carry on the trust is permissible unless contrary to some express provision of the gift. *Boston Safe Deposit & Trust Co.* v. *Stratton*, 259 Mass. 465, 475. *Quincy* v. *Attorney General*, 160 Mass. 431. *Adams* v. *Plunkett*, 274 Mass. 453, 462. Permission was granted to the voluntary religious association known as the church at any time after its acceptance of St. 1913, c. 84, and therefore after its complete establishment and organization as a corporation, to accept by vote conveyance to it of all the property of another ecclesiastical corporation known as The Winthrop Church. No time was limited within which that might be done. The corporate entity of the new organization would have been in no wise affected if no such conveyance should be made to it. Upon such conveyance the members of The Winthrop Church would become members of the new corporation. The existence and independence of the new corporation were in no particular affected by such conveyance and by such accession to its membership. Its position differs in no respect from what it would be if increase of membership should come from attendance upon its services by those previously unchurched, or if its property should be augmented by fresh gifts from individuals. The effect upon The Winthrop Church of taking the action

authorized by St. 1913, c. 84, is described in §§ 8 and 11 as becoming "merged" in the new corporation. This language imports that the distinct and separate organization is the new corporation, to which the other has made contribution of members and property. The identity of the new corporation is not affected by the accretion, either of membership or of property, which has come to it in this way. The conclusion follows that the new corporation has continued as a separate and distinct corporation. *Proprietors of Locks & Canals on Merrimack River* v. *Boston & Maine Railroad,* 245 Mass. 52, 57–58. *Commonwealth-Atlantic National Bank of Boston, petitioner,* 249 Mass. 440, 444.

The facts that, since the acceptance of St. 1913, c. 84, the religious services of the church have been chiefly conducted in the edifice formerly owned by The Winthrop Church, that the edifice theretofore used on Harvard Square has not been occupied and that the chimes on the latter building have not been rung, are not of prevailing significance. The testatrix annexed no condition touching these matters to her benefaction. The legatee was not required to maintain public worship in the old building. It was given freedom of action in this particular, either to continue to occupy the old building, or to go to another in a different neighborhood. The chimes may be rung in the old building or removed to a new location, or at the discretion of the officers of the church they need not be rung for a time.

The conclusion is that the decree must be reversed. In the new decree to be entered after rescript one fourth of the residue must be distributed to The First Church in Charlestown and no share distributed to Abbot Academy. Otherwise there is no error in the former decree. Additional counsel fees as between solicitor and client to be paid out of the estate are to be in the discretion of the Probate Court.

*Ordered accordingly.*