WILLIAM SAUNDERS, executor, *vs.* PRESIDENT AND FELLOWS
OF HARVARD COLLEGE & others.

Middlesex.   April 3, 4, 1945. — June 28, 1945.

Present: FIELD, C.J., DOLAN, RONAN, WILKINS, & SPALDING, JJ.

*Devise and Legacy,* Identity of beneficiary.   *Probate Court,* Costs.   *Executor and Administrator,* Expenses of administration.

A bequest in a will "to the Huntington Memorial Hospital 695 Huntington Avenue, Boston," was properly directed to be paid to the corporation, President and Fellows of Harvard College, to be used for the work in cancer research and treatment formerly carried on at the hospital so designated, where it appeared that, many years before the will was made and the death of the testatrix, a department of that corporation, denominated "The Cancer Commission of Harvard University and Collis P. Huntington Memorial Hospital," had built the hospital at the address stated in the will and that, at about the time of the death of the testatrix, the university, under agreement with the Massachusetts General Hospital, because of the inordinate expense of operation of the cancer hospital as a separate plant, had removed its entire plant and equipment to a section of the Massachusetts General Hospital's plant designated as "Huntington Memorial Hospital," where the university's department carried on the same activities with the same staff of physicians and laboratory assistants as at the Huntington Avenue address, the net cost of the activities being paid by the university from endowment funds given it for research in and treatment of cancer: the hospital named in the will had not ceased to exist and the purpose the testatrix had in view had not failed.

A decree of a Probate Court upon a petition by the executor of a will seeking instructions with relation to the identity of a beneficiary of a legacy in the will properly directed payment of costs and expenses to counsel for the respective claimants out of the residue of the estate and not out of the "fund."

PETITION, filed in the Probate Court for the county of Middlesex on May 5, 1943, for instructions.

The case was heard by *Leggat,* J.

*J. E. Angoff,* for next of kin, respondents.

*J. M. Russell,* (*W. C. Piper* with him,) for the President and Fellows of Harvard College, respondent.

DOLAN, J.   By this petition the executor of the will of

Patience A. Hogan seeks to be instructed whether a legacy bequeathed by the testatrix to the Huntington Memorial Hospital "is now payable to anyone; and, if it is now payable, to whom it shall be paid, and how it shall be applied." The case comes before us on the appeal of certain residuary legatees, who are among the next of kin of the testatrix, from the decree entered by the judge directing the petitioner to pay the legacy in question to the President and Fellows of Harvard College to be used for the work formerly carried on at Huntington Memorial Hospital, and directing that costs and expenses allowed to counsel for the respondents be paid out of the residue of the estate of the testatrix.

The evidence is reported, but no report of material facts was made by the judge. Material facts disclosed by the evidence may be summed up as follows: Patience A. Hogan died December 5, 1941. Her will, executed in December, 1938, was admitted to probate and the executor was appointed on January 9, 1942. The pertinent provisions of the will are: "After the payment of my just debts and funeral expenses, I give devise and bequeath all the property of which I may die seized or possessed, in the following percentages of all that remains; . . . 23. I give to the Huntington Memorial Hospital 695 Huntington Avenue, Boston, Massachusetts, Six and one quarter (6.25) per cent; . . . Should any of the legatees or devisees named in this will be not living at the time of the probate of this will, I direct that his or her gift go to his or her legal heirs or to the successors of the charitable institution mentioned."

For many years prior to January 1, 1942, the President and Fellows of Harvard College, hereinafter called the corporation, had a department of the college denominated "The Cancer Commission of Harvard University and Collis P. Huntington Memorial Hospital." About the year 1912 the corporation caused to be erected and furnished, at 695 Huntington Avenue in Boston, a hospital building called the Collis P. Huntington Memorial Hospital. Its activities consisted of cancer research and the treatment of sufferers from cancer. The hospital was administered under the

direction of the department.  Since its establishment in
1899 the cancer commission has always been a department
of the corporation and the hospital was always regarded
by everybody connected with it as a hospital for cancer re-
search.  It is not a separate corporation.  Various bequests
for cancer research were made to the corporation under its
legal name or the name by which the hospital was denomi-
nated by the corporation.  At the time of the death of the
testatrix (December 5, 1941), as well as at the time when
her will was allowed (January 9, 1942), the principal of the
gifts for cancer research and treatment held by the corpora-
tion amounted to about $900,000.  After the erection of the
hospital building, most of the activities having to do with
cancer research and treatment were carried on in that
building.  For many years prior to January 1, 1942, many
thousands of outpatients were treated there and about five
thousand inpatients had been cared for yearly in the beds
of the hospital.  Maintenance of the hospital facilities had
resulted in substantial annual deficits, and it became neces-
sary to resort to and exhaust part of the principal of the
endowment funds.  The hospital, moreover, was a small
unit having only sixteen active beds.  In the spring of the
year 1941, the president of the corporation was of opinion
that such a small unit as the hospital could not operate at
high efficiency in dealing with such a disease as cancer, and
suggested that the only way out was to see if some hospital
associated with the Harvard Medical School would under-
take to do the work, thereby saving a great deal of money.
After taking the matter up with three hospitals, including
the Massachusetts General Hospital, it was decided that
very favorable arrangements could be made with that
hospital and to transfer all the services at the "Huntington
Building" to the quarters of the Massachusetts General
Hospital.  Accordingly, the corporation made an agree-
ment with the Massachusetts General Hospital for the
conduct of the activities of the cancer commission depart-
ment of the corporation, and on or about January 1, 1942,
the corporation removed beds, radium equipment, supplies
and records of patients from the hospital on Huntington

Avenue to a section of the Massachusetts General Hospital designated by signs as "Huntington Memorial Hospital." At the same time patients who had formerly been or were then being treated at the hospital on Huntington Avenue were notified of the change. The agreement provides for care and treatment of patients, for nurses, attendants, and a staff of doctors comprising substantially the same doctors who treated patients at the Huntington Avenue hospital, and for payment by the corporation of the net costs of those services over the amounts collected from the patients. Since January 1, 1942, the corporation has made these payments from the endowment funds for care and treatment of cancer patients. And since that date the corporation through the department of cancer commission and Collis P. Huntington Memorial Hospital has carried on cancer research work and treatment in the buildings of the Massachusetts General Hospital, performing the same services as before, and employing and paying the salaries and expenses of the same staff of cancer research doctors and substantially the same staff of laboratory assistants as at 695 Huntington Avenue. The laboratories in which these doctors and assistants work are designated by signs as the medical laboratories of the Collis P. Huntington Memorial Hospital of Harvard University. Beds transferred from the hospital at 695 Huntington Avenue are designated by plaques marked Huntington Memorial Hospital and are reserved for "Huntington" patients. The corporation retains ownership of the building at 695 Huntington Avenue, and as its agreement with the Massachusetts General Hospital is terminable on one year's notice the corporation can resume its activities at that location if it sees fit. Huntington Memorial Hospital is still listed in the telephone directory.

Counsel for the appellants properly makes no contention that the purpose to which the Huntington Memorial Hospital was devoted did not constitute a public charitable purpose. He makes no contention that, if the legacy made by the testatrix under that description had taken effect prior to January 1, 1942, it would not have been payable

rightly to the corporation. His sole contentions in behalf of the appellants are that as of the date of the allowance of the will of the testatrix the designated hospital had ceased to exist, that it had no successor who could take as such under the terms of the will, and that the legacy lapsed and fell into the residue.

We do not concur in the foregoing contentions. We are of opinion that the particular location in which the activities of the department of cancer commission and Collis P. Huntington Memorial Hospital are conducted is of no materiality. So long as those activities are conducted as before, no matter where, for the same purposes, and under the same control, and at the expense and under the supervision of the department of the corporation established for those purposes, it cannot be said properly that the Huntington Memorial Hospital as conceived by the testatrix has ceased to exist. Accordingly no question arises as to a successor. No question of cy pres is presented. The testatrix in making her bequest to the agencies known to her as the Huntington Memorial Hospital must be taken to have had as her principal object the aid of the charitable purposes of the study and treatment of those afflicted with cancer. That the object of her benefaction was known generally to the public, many of whom were there served, may be inferred from the evidence.

In the instant case there is no change in the legal entity, that is, the corporation. Its department of cancer commission and Collis P. Huntington Memorial Hospital was never and is not now a separate legal entity. It has never had existence apart from its departmental existence. That exists today just as it did when the testatrix made her will, when she died and when her will was allowed. Its purposes remain the same as those for which the legacy in question was given under the designation of the hospital. They are, as they always were before, under the supervision of the corporation's department, and the cost is met out of the funds donated to the corporation for the purposes of the department. In the present case there has been no consolidation of the department in question of the corporation

with any other corporation, as in *Gladding* v. *St. Matthew's Church*, 25 R. I. 628, *Merrill* v. *Hayden*, 86 Maine, 133, and other cases relied on by the appellants. We do not decide nor intimate that in such a case the legacy would fail. The so called hospital in question has not ceased to exist, as was the case in *Rhode Island Hospital Trust Co.* v. *Williams*, 50 R. I. 385, and other cases cited by the appellants. *Teele* v. *Bishop of Derry*, 168 Mass. 341, cited by the appellants, is likewise distinguishable. In that case the purpose that the testatrix had in view had failed. In the instant case the purpose that the testatrix had in view has never failed, but is still the same and is being administered under the same auspices. No citation of precise authority is needed to support the proposition that, in the absence of contrary provisions of the trusts, corporations established for public charitable purposes do not cease to exist nor lose their identity merely by transferring the seat of administration of their trusts from one place to another, or by adopting different methods of administration in furtherance of the charitable purposes of the trusts, or by selecting different agencies to assist in their administration under the supervision of the corporate trustees. The legacy in question has not failed. See *Pope* v. *Hinckley*, 209 Mass. 323; *Curtis* v. *First Church in Charlestown*, 285 Mass. 73.

Counsel for the appellants has also argued that the judge erred in directing that the costs and expenses that he allowed to counsel for the corporation and to counsel for the respondents who have appealed be paid out of the residue of the estate of the testatrix, and that these allowances should have been charged to the "fund." There was no error in this respect. The petition was brought by the executor of the will of the testatrix. It may be assumed properly that the respondent corporation did not raise the issue but was cited in. The costs and expenses incurred therein are properly a charge of administration payable out of the general estate of the testatrix. There is nothing in the cases cited by counsel for the appellants in conflict with this conclusion.

Counsel for the respondent corporation and counsel for

the appellants have filed motions in this court that they be allowed costs and expenses of this appeal. It appears, however, that the amount of the legacy in question is but about $12,000. This being so, and taking into consideration the character of the controversy, we are of opinion that the allowances made in the court below of $1,000 each to counsel for the corporation and to counsel for the respondents who have appealed are adequate and that no further allowances for costs and expenses should be made.

*Decree affirmed.*