IND. MASONIC HOME ET AL. *v.* AN ASSOCIATION OF FRANCISCAN
SISTERS OF THE SACRED HEART ET AL.

[No. 20,455. Filed April 2, 1968. Rehearing denied
May 6, 1968. Transfer denied July 15, 1968.]

*Miles C. Gerberding, J. A. Bruggeman, Barrett, Barrett & McNagny, Edwin R. Thomas* and *David B. Keller,* of Fort Wayne, for appellants.

*Jerome B. Van Orman,* of Fort Wayne, for appellees.

PRIME, J.—A. Linn Murray died testate on August 11, 1957. He executed a codicil to his will December 29, 1955. This codicil is the only part of the will with which we are concerned.

## CODICIL

"I, A. Linn Murray of the city of Auburn, DeKalb County, Indiana, having heretofore executed my last will and testament, bearing date December 17, 1954, do now make, publish and declare this to be a codicil thereto:

I hereby revoke and strike out Item XIV thereof and in the place and stead of said Item XIV I substitute the following in my said will:

I give, devise and bequeath to Indiana Masonic Home at Franklin, Indiana, for the use of the aged and orphan residents of said home, one-half of the rest and residue of my estate and I give, devise and bequeath to Sacred Heart Hospital, located at Garrett, Indiana, one-half of said residue of my estate, to be used by such institutions as they shall determine, either directly or as trust funds, for any purpose or purposes as determined by them connected with the said institutions or the patients thereof.

In all other respects I reaffirm the provisions contained in my last will and testament.

In witness whereof, I have executed this codicil on this 29th day of December, 1955.

"/s/ A. Linn Murray     (Seal)

The executors of the last will and testament of A. Linn Murray, deceased, filed an action to construe his will and determine who was entitled to one-half of the residue.

The Sacred Heart Hospital had been operated since 1904 in the city of Garrett, Indiana, and was established and operated by an Association of Franciscan Sisters of the Sacred Heart. On the date of the making of the will, that is, the codicil thereto, in 1955, the Sacred Heart Hospital was in full operation and it was also in full operation on the date of the death of the decedent on April 11, 1957.

Before the estate was settled and the bequests were distributed, the Hospital announced that it was closing on May 1, 1959, and it did close at that time.

We now have the issue of whether or not the Association of Franciscan Sisters of the Sacred Heart should receive the bequest, since their Hospital was closed. The trial court held in favor of the Franciscan Sisters and this appeal has been brought.

We have two appellants.

1. The Masonic Home of Franklin, Indiana.
2. Two grand nieces of the decedent who claim they should receive the bequest.

The Garrett Community Hospital, which was an outgrowth of Sacred Heart Hospital, is also a party to the proceedings here. The building and grounds were purchased by a certain doctor from out of town and later sold to the town of Garrett, which has operated the hospital since that time as a Community Hospital.

In the trial court, the co-administrators asked for advice and directions as to the payment of the bequest.

The argument of the claimants is that since the will made the bequest to Sacred Heart Hospital, this did not name the parent organization, An Association of Franciscan Sisters of the Sacred Heart.

There was a stipulation agreed to by and between the parties as follows:

"It is stipulated and agreed by and between the parties hereto and taken as true and proven that An Association of Franciscan Sisters of the Sacred Heart operate hospitals throughout the country. It is further stipulated that the Association of Franciscan Sisters of the Sacred Heart operates two orphanages in Illinois and sixteen schools, supply the teachers, in various parts of the country, six of which are located in Indiana: at Auburn, Garrett, Fort Wayne, Avilla, Shererville and Dyer."

Both appellants assigned as error that the court erred in overruling their motions for new trial and rely upon their specifications that the decision of the court is contrary to law and the decision of the court is not sustained by sufficient evidence.

The thrust of the agrument is that An Association of Franciscan Sisters of the Sacred Heart is not entitled to the share of the residue set out in the codicil because the intent of the testator was that the local hospital known as Sacred Heart Hospital should be the only entity to share. As mentioned above, the Hospital was in operation when the decedent made his will and it was also in operation at the death of the decedent, in fact, it was in operation some twenty-one months after the death of the decedent. Since there is no record in the office of the Secretary of State of Indiana that such a corporation as Sacred Heart Hospital existed, it is necessary to look to the evidence to ascertain what entity operated the Hospital. An Association of Franciscan Sisters of the Sacred Heart was the legal entity owning and operating the Hospital popularly known as Sacred Heart Hospital.

The case of *Lowe's Estate* (1946), 117 Ind. App. 554, 70 N. E. 2d 187 illustrates this principal. The court stated the following:

"It is well established that a bequest made to an institution in the name by which it is popularly known is intended and belongs to the legal entity which administers and receives the funds used in its operation. And the fact that the gift to an institution is made in its common or popular name cannot be permitted to defeat the intention of the testator or to destroy the validity of the gift. In such cases, the law will permit the identification of the legal entity in order to ascertain to whom the legacy belongs."

Another case on this issue is *Crawfordsville Trust Co.* v. *Elston Bank and Trust Company* (1940), 216 Ind. 596, 25 N. E. 2d 626. The court states at page 612:

"The fact that the bequest was to the hospital by its common name and not in the name of the legal entity which is designated by law to hold the legal title of the hospital cannot be permitted to frustrate the humane intention of the testator and destroy the validity of such a charitable gift."

It should be pointed out that this bequest was not a trust fund. It was an outright bequest. In such a case, the title vested as of the date of death of the testator. The law is clear that the estate will be held to vest immediately on the date of the death of the testator.

In *Lowe's Estate, supra,* the court stated:

"We must bear in mind the general rule that the law favors the vesting of estates and that in construing a will if there is any doubt as to when the testator intended the property to vest in his residuary beneficiaries, it will be construed to vest the property at the testators death."

29 I.L.E. § 279, *Wills* p. 436 states:

"Unless the terms of the will are such as to make the advise contingent until the time for payment of proceeds the interests of the beneficiaries will be regarded as vested, although the property is ordered to be sold and the proceeds to be divided or be paid at a future time."

Further, in 29 I.L.E. § 272, *Wills* p. 439:

"The law favors the early vesting of estates. Thus, the law favors the vesting of estates immediately or at the earliest possible moment or opportunity, and wills should be construed accordingly, in the absence of the clear manifestation of an intention of the testator to the contrary. An intent to postpone the vesting of an estate must be clear and manifest and must not arrive by inference or construction and in case of doubts as to when the testator intended the property to vest in the beneficiary, the estate will be held to vest immediately on the death of the testator or at the earliest possible time."

It seems clear then, that the bequest given here was an outright gift and that no charitable trust is involved.

The case of *Ebenezer's Old People's Home* v. *South Bend Old People's Home* (1943), 113 Ind. App. 382, 48 N. E. 2d 851 is a case in point. The bequest in this case was:

"In the event there is an institution in South Bend at my death or two years thereafter, which has for the purpose of its existence the maintenance of a home for old people irrespective of their religious beliefs upon at least a partial charitable basis, then I leave the rest and residue of my estate to it."

Such an organization had received the property at the testator's death but had not devoted the gift funds to its purposes for sixteen years. The appellants sought in the action to forfeit the gift because of non-user and because the special purposes had not been carried out.

The court stated at page 391:

"In their brief the appellants cite many cases from this jurisdiction and elsewhere treating of charitable trusts and circumstances under which the corpus thereof will revert for non-user. These cases would all be influential in our consideration of this appeal if it could be said that charitable trust is here involved. We are not in accord, however, with such a theory for the reason that the mere statement in a will on the purpose for which a subject property is to be used, does not create a trust."

The court further stated:

"The charity in which such an institution was engaged appealed to the testator and he gave to it the residue of his estate to aid in the carrying out of its purposes without other restrictions or limitations. Such a bequest has none of the characteristics of a trust and amounts to nothing more than a gift to a charitable institution and whose purposes and objects seem sympathetic."

In the case of *Stockton* v. *N. W. Branch of the Women's Foreign Missionary Society of the Methodist Episcopal Church* (1956), 127 Ind. App. 193, 133 N. E. 2d 875, the court made the following statement:

"We view the devise to the appellees, being charitable nonprofit corporations which have for their purposes missionary work in foreign fields and for the United States and Territories as being a gift absolute without restrictions as to use. The testatrix did not designate a particular use or condition to which the devises were to be applied within the corporate purposes of appellees such as education, either for boys or girls, construction purposes, hospitals, health and sanitation or the many other purposes which this court can take judicial knowledge of that such societies as appellees are concerned with in carrying out the purposes of their respective corporations, but to the contrary, left the devises to be used for the general purposes that of missionary work."

The appellants urge that the closing of the Sacred Heart Hospital worked as a divestiture of the gift. However, in *Ebenezer, supra,* the court commenting on this point stated:

"In support of this theory the appellants have referred us to many cases all of which we have examined with care. In each of them either a trust or a condition of some character is involved and it seemed well settled that the breach of a condition subsequent will usually divest title and that public policy will not permit the nonuser of trust funds. As is heretofore said, however, we are not concerned with either a trust or a condition subsequent and in the absence of both, we find no authoritative sanction for a principal of law that takes an unconditional title and property from one in whom it has vested even though the

use thereof is limited to certain designated purposes by the instrument through which such title was acquired and such use has failed."

The case of *Old Colony Trust Co.* v. *Third Universalist Society of Cambridge* (1934), 285 Mass. 146, 188 N. E. 711 is in point. The issue was whether an incorporated religious society which, subsequent to the testator's death closed its doors and sold its real and personal property, was entitled to a legacy left to it. The court stated as follows:

"There is no doubt about the identity of the legatee. The society is precisely and accurately described in each will. It continues to exist with full corporate powers. It has not been dissolved. It is capable of accepting such legacies as here are in question without overstepping the boundaries of its corporate competency . . ."

In the instant case, we do not have a situation where an organization is in existence at vesting but dissolves before distribution to it of the bequest. A legal entity simply closed one branch of its operation and the Association continues to exist and promote activities and operations.

The appellants urge, with much ardor, that the testator intended to benefit the local hospital, Sacred Heart Hospital, where he had been treated and where some of his relatives had gone for treatment. They bespeak and contend that the testator cherished the Sacred Heart Hospital and none other and that he did not intend the gift to extend to An Association of Franciscan Sisters of the Sacred Heart. Of course, this is supposition on all sides. We will never know completely what the testator would have done had he known the Hospital was going to close. Inasmuch as the gift vested at his death we are unable to say that the bequest would be divested simply because one branch of the Association had gone out of business. The Association owns and operates other hospitals and charitable institutions in Indiana as well

as other localities. As a matter of fact, we might even say, had the Hospital remained open long enough to receive the bequest, that some of the funds might have been used for other charitable institutions as well as Sacred Heart Hospital. Assuming, if after distribution, the Sacred Heart Hospital had been closed after twenty-two months and a portion of the bequest remained, the appellee, An Association of Franciscan Sisters could certainly have used the balance of the funds for general corporate purposes elsewhere.

Another thought that might be apropos is that if the Sacred Heart Hospital had remained open the Association would have had to operate it. Sacred Heart Hospital had to mean some form of Association, not just a building.

Carried a little further, had the bequest been to the Franciscan Hospital for example. What then?

It is also in the record that Charlotta Murray, wife of the decedent, had made a bequest to the Sacred Heart Hospital which was accepted and received by an Association of Franciscan Sisters of the Sacred Heart. No question was raised here.

A testamentary gift to an unincorporated body operating under a parent organization legally capable to taking and holding property may be upheld as a gift in trust to such parent organization for the benefit of the unincorporated association to the end that the charitable purpose of the gift should not be frustrated. *In Re Lemcke's Will* and *In Re Whittley* (1945), 53 N. Y. S. 2d 253, 254.

A bequest of one share of remainder of residuary trust, created by will, to named unincorporated Episcopal Church at or near certain village, will be construed as gift to incorporated trustees of diocese, which is such church's parent charitable corporation holding and administering all property used for purposes of church, for church's benefit. *In Re Allen's Estate* (1943), 45 N. Y. S. 2d 699.

Where will gave remainder of trust to an unincorporated society which had no legal capacity to receive a legacy, and which did not exist as a separate entity, but was a permanent committee of a charitable corporation organized to clothe needy children attending school maintained by

corporation for religious instruction, legacy was payable to corporate parent, which was bound to apply the gift to purposes of subordinate committee to which testator dedicated it. *In Re Littman's Estate* 32 N. Y. S. 2d 686. See also: *St. Joseph's Hospital* v. *Bennett* 281 N. Y. 115, 22 N. E. 2d 305, 130 A. L. R. 1092.

If under a will directing a trustee upon termination of trust to pay principal to "improper authorities of the Roman Catholic Church of St. Francis Xavier in the city of New York for their charitable uses," the court held that the college of St. Francis Xavier is a proper authority for receiving the property on behalf of the church for it is in effect the parent corporation insofar as business administration is concerned and holds record title to the church realty. *In Re Eaton's Estate* 62 N. Y. S. 2d 348.

Testatrix in her will executed in 1938, bequeathed a legacy to the hospital which was operated by the Cancer Research Department of Harvard University. The testatrix died December 5, 1941, and during 1941 Harvard University made arrangements with Massachusetts General Hospital to carry on Cancer Research and treat patients with the University's same staff employed by University and the University agreed to pay net costs of services over the amount collected from patients, and in January, 1944, moved all their supplies to the new hospital, designated hospital as conceived by testatrix did not cease to exist and legacy did not fail. The court in this case stated as follows:

"No citation of precise authority is needed to support the proposition that, in the absence of contrary provisions of the trust, corporations established for public charitable purposes do not cease to exist nor lose their identity merely by transferring the seat of administration in furtherance of the charitable purposes of the trust, or by selecting different agencies to assist in their administration under the supervision of the corporate trustees. The legacy in question has not failed." *Saunders* v. *President and Fellows of Harvard College, et al.* 61 N. E. 2d 839, 318 Mass. 447. See also: *Curtis* v. *First Church of Charlestown* (1934), 188 N. E. 631, 285 Mass. 73, 96 C. J. S. Para. 1207.

Testator made a bequest to the Christian Church of Chardon, Ohio, later the Christian Church of Chardon and the First Congregational Church of Chardon consolidated under the name of the Pilgrim Christian Church. Action was brought to declare the bequest void. The court held that where testator made bequest to church "as now organized

and functioning" and that church was consolidated and testator continued to attend and to support consolidated church and made no change in his will, legacy established by testator did not lapse. The court said . . . "it is fundamental that the law favors charitable bequests and does not favor lapses." *In Re Will of Barker* v. *The Pilgrim Christian Church of Chardon,* 162 Ohio St. 531, 124 N. E. 2d 421.

We believe that the evidence conclusively shows that the Bequest was a definite gift and that it vested upon the death of the testator. It is also conclusive that An Association of the Franciscan Sisters of the Sacred Heart was the legal entity owning and operating the Sacred Heart Hospital.

Another decision in this field is *Milligan* v. *Greenville College, Tenn.* (1928), 2 S. W. 2d 90. The bequest was to:

"A. F. and A. M. Masonic Widows and Orphans Home at Nashville, Tenn. to be used as said home shall deem best but subject to a charge that said home shall keep in order my family burial lot."

The home was no legal entity and was incapable of taking. The state organization operating the home was the Order of the Ancient Free and Accepted Masons. The court gave the bequest to the state organization saying that the misnomer was unimportant. The court held that the bequest was an absolute gift to the state organization. We quote the court:

"So we are of the opinion that the bequest goes to the Grand Lodge of the Ancient Free and Accepted Masons of Tennessee to be held by that corporation under its charter and articles of foundation, due regard to be paid by it to the direction of the testator that said funds shall be used for the benefit of the home at Nashville and as far as such direction goes and beyond that under the general trusts under which said corporation holds all its property, if the direction is not comprehensive."

The testator in his codicil uses the word "institution." What is this institution? Is it merely the local hospital? The local hospital could not determine how to use the gift. It ap-

pears to us that the determination would have to be made by the Association who owned and ran the hospital. The hospital, as a brick and mortar physical building, could not make that determination. The Sacred Heart Hospital was not a branch of the Association. It was the Association by a popular name.

We must remember that the Association of Franciscan Sisters did operate the Hospital for twenty-two months after the funds vested in them. Had the executors been able to complete settlement of the estate and the bequest delivered over to the Hospital, there certainly would have been no question about this law suit. We might add that this is a classic example of the necessity for prompt settlement of estates.

As always, the pole star of our consideration is the intent of the testator. This we have endeavored to pursue and ascertain.

We agree with the decision of the trial court. It was sufficiently sustained by the evidence and was not contrary to law. Judgment affirmed.

Carson, C. J., Cooper and Faulconer, JJ., concur.

NOTE.—Reported in 235 N. E. 2d 708.