796                                      371 Mass. 796

First Bank & Trust Co. of Hampden County *v.* Attorney General.

FIRST BANK AND TRUST COMPANY OF HAMPDEN COUNTY,
trustee, *vs.* ATTORNEY GENERAL & others
(and a companion case[1]).

Hampden.    October 7, 1976. — February 1, 1977.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, & WILKINS, JJ.

*Trust,* Charitable trust.   *Religious Society.*

Certain testamentary bequests for the benefit of a religious society in
    Chicopee did not fail as a result of its merger with a religious so-
    ciety of the same denomination in Springfield. [799-803]

Two PETITIONS filed in the Probate Court for the county
of Hampden on July 6, 1973, and August 10, 1973, re-
spectively.

The cases were heard by *Smith,* J.

The Supreme Judicial Court granted a request for direct
appellate review.

*Ronald C. Kidd* stated the case.

*Gerald R. Hegarty* for Third Congregational Society in
Springfield.

*Mary Joann Reedy,* Assistant Attorney General, for the
Attorney General.

*Richard F. Faille,* guardian ad litem, pro se.

*William B. Duffy, Jr.,* for Unitarian Universalist Asso-
ciation, amicus curiae, submitted a brief.

HENNESSEY, C.J.   First Bank and Trust Company of
Hampden County (First Bank) brought two petitions in
equity as trustee under the wills of Sarah E. Spaulding
and George M. Stearns seeking instructions as to whether
certain bequests under both wills to or for the benefit of

---

[1] The companion case seeks instructions regarding three separate be-
quests under the will of Sarah E. Spaulding.

371 Mass. 796                                                  797

First Bank & Trust Co. of Hampden County *v.* Attorney General.

the First Unitarian Society of Chicopee (Chicopee Society) have failed as a result of the merger of that church with the Third Congregational Society in Springfield (Springfield Society). The cases were consolidated for trial. A Probate Court judge found that all bequests had failed and ordered the trustee to distribute the funds in its hands to persons claiming under the residuary legatees named in both wills. Both the Attorney General and the Springfield Society appealed from those judgments. We reverse as to both trusts.

The merger of the Chicopee Society, a religious society organized under St. 1834, c. 183, § 6, and the Springfield Society, a corporation established under St. 1818, c. 86, was authorized by St. 1972, c. 325. Section 2 of that statute provided that "[u]pon the completion of the merger . . . the First Unitarian Society of Chicopee shall no longer continue as a separate society and the Third Congregational Society in Springfield under its existing corporate powers may carry on the activities heretofore carried on by said First Unitarian Society of Chicopee as part of the activities of said Third Congregational Society of Springfield, and all persons who were members of said First Unitarian Society of Chicopee shall become members of said Third Congregational Society in Springfield." Section 3 of that statute provided for the transfer of all the property of the Chicopee Society, including bequests, devises, and gifts, to the Springfield Society and for the vesting in the Springfield Society of all the powers, rights, and privileges possessed by the Chicopee Society with respect to such property.

The only issue before us in these cases is whether the ruling of the Probate Court judge that the bequests failed because religious services were no longer conducted in Chicopee after the merger and because no former members of the Chicopee Society continued to be members of the merged church was correct. The power of the Legislature to transfer these bequests to the Springfield Society subject to the conditions imposed by the terms of the original bequests to the Chicopee Society is not disputed. The Probate Court judge did not find that the merger itself

had caused the bequests to fail but rather that, after the Chicopee Society's property interest in these bequests had vested in the Springfield Society, the merged society failed to comply with the conditions imposed in the two wills.

We summarize the evidence before the Probate Court judge which was common to both cases. The Springfield Society was founded in 1818. It has been a Unitarian church since its founding and was one of the churches which participated in the formation of the American Unitarian Association in 1825. It maintained that affiliation until 1961 when the American Unitarian Association merged with the Universalist Church of America to form the Unitarian Universalist Association and has continuously since that time been a member of the merged association.

The Chicopee Society was a member of the American Unitarian Association from its inception until 1961 when it became a member of the Unitarian Universalist Association. It maintained that affiliation until the merger of the two churches.

The Chicopee Society had no minister of its own from sometime in 1970; the minister of the Springfield Society participated in and conducted religious services at the Chicopee church on several occasions and provided pastoral services for members of that church. The societies held separate religious services until May, 1971, and thereafter, by vote of the standing committee of the Chicopee Society, held joint services with the Springfield Society at the Springfield church from September, 1971, to November, 1972. While some members of the Chicopee Society attended the joint services, at the time of the hearing before the Probate Court judge no one who had been a member of the Chicopee Society was still attending services in Springfield. There were, however, residents of Chicopee who attended the Springfield church, but none of these persons had been members of the Chicopee Society.

The Springfield Society conducts religious activities for people in the greater Springfield area, which includes

Chicopee. A distance of approximately three miles separates the former site of the Chicopee church, which building was sold after the merger, and the location of the Springfield church. There is no other Unitarian church within a radius of fifteen miles of Chicopee.

1. *The Stearns Trust.*

George M. Stearns died testate in 1894. The fourteenth clause of his will, which had been executed earlier that year, left the sum of $5,000 in trust, the income from which was "to be applied to the support of Unitarian preaching in Chicopee by the Unitarian Society of said City. If said Society shall fail to continuously support such preaching substantially, the principal to fall into the residue clause of this will."[2] First Bank was appointed trustee in 1895, and it paid the net income to the Chicopee Society annually until its merger with the Springfield Society.

The Probate Court judge found the absence of services conducted within the city limits of Chicopee fatal to the continuation of the trust. We disagree, and conclude that such a construction of the terms of the bequest is unduly narrow and restrictive and in conflict with our general rule that charitable trusts should be construed liberally. See, e.g., *Trustees of Dartmouth College* v. *Quincy*, 357 Mass. 521 (1970).

The dominant intent of the testator was to provide for the perpetuation of Unitarian beliefs among the residents of Chicopee. Cf. *Trustees of Dartmouth College* v. *Quincy*, *supra* at 530-531; *Ford* v. *Rockland Trust Co.*, 331 Mass. 25, 43 (1954); *Miller* v. *Parish of the Epiphany, Winchester*, 302 Mass. 323, 327 (1939). It is not necessary to require the physical presence of a preacher in a pulpit in Chicopee every Sunday morning to achieve this purpose. The bequest was not conditioned on the continued separate existence of the Chicopee Society. See *Curtis* v. *First Church in Charlestown*, 285 Mass. 73, 79-81 (1933).

---

[2] The uncontradicted evidence adduced at trial indicated that the Springfield Society was a Unitarian church, and no issue is raised with respect to the definition of "Unitarian preaching."

A valid charitable trust has been in effect for over seventy years, and circumstances have changed substantially since the death of the testator in 1894. See *Trustees of Dartmouth College* v. *Quincy, supra* at 530. There are currently few Unitarians living in Chicopee, too few to support a separate religious establishment. As a result of such depletion in membership, the standing committee of the Chicopee Society concluded that merger with the Springfield Society was desirable in order to ensure that Unitarian services would continue to be available to the people of Chicopee. While the Chicopee Society no longer exists as a separate entity, its religious activities are carried on by the Springfield Society, and we conclude that the Springfield Society has continuously and substantially supported Unitarian preaching within the meaning of the bequest. The continued existence of the Chicopee Society was not the cornerstone of the gift, and the separate existence of that society is not necessary for the achievement of the testator's charitable intent.

Springfield and Chicopee are contiguous communities. The building in which the Springfield Society conducts its religious services is only three miles from the former site of the Chicopee church. The fact that there is no other Unitarian church within a radius of fifteen miles indicates that the Springfield church is the one to which Chicopee Unitarians would logically turn for formal religious services. The Springfield Society is ready and willing to perform the full range of Unitarian pastoral and religious services for residents of Chicopee and has performed "outreach" services specifically for the benefit of the Chicopee community.

2. *The Spaulding Trusts.*

Sarah E. Spaulding died testate in 1907. The tenth, eleventh, and twelfth clauses of her will made three separate bequests of $6,000, $5,000, and $5,000 to the Chicopee Society, on the condition that those sums be separately invested and the income applied to the expenses of the society. The twelfth clause added the following condition: "If the said Unitarian Society ceases to hold religious

services as a Unitarian Church Organization, the bequest given under this clause and those given in paragraphs ten and eleven of this will, shall all of them revert to my estate and become a part of the residue of my estate . . . ." The Chicopee Society entered into an agreement with First Bank under which it would administer these bequests as trusts and pay the income to the society periodically. First Bank paid this income to the society until 1972.

The Probate Court judge found that the three Spaulding trusts failed because the Chicopee Society had ceased to hold services as a Unitarian church organization within the meaning of clause twelve and ordered the proceeds of the trust to be distributed to persons claiming under the residuary legatees. We disagree with the conclusions and order of the judge.

The statute authorizing the merger provided that on its completion the Chicopee Society would no longer continue as a separate society. St. 1972, c. 325, § 2. However, the statute further provided that "the Third Congregational Society in Springfield under its existing corporate powers may carry on the activities heretofore carried on by said First Unitarian Society of Chicopee as part of the activities of said Third Congregational Society in Springfield, and all persons who were members of said First Unitarian Society of Chicopee shall become members of said Third Congregational Society in Springfield."

While the language of the statute allows the Springfield Society to carry on the activities formerly conducted by the Chicopee Society but does not command that it do so, it is undisputed that the Springfield Society is holding services as a Unitarian church organization. Furthermore, under the terms of the statute, all members of the Chicopee Society automatically became members of the Springfield Society as soon as the merger was effective.

The Chicopee Society ceased to exist as a separate organization upon merger. However, the purpose of the merger appears to have been to ensure that Unitarian services would continue to be available to the residents of Chicopee. The evidence before the Probate Court judge

suggests strongly that the Chicopee Society was in severe financial difficulty due to the decline in the number of Unitarians attending the church and that its own resources were insufficient to enable it to continue to function as a separate, self-sufficient organization. To ensure that the resources it did have would be used to perpetuate the Unitarian religion, a decision was made to merge with the Springfield Society and to transfer its resources to the merged society. The Springfield Society has at all times since the merger held services as a Unitarian religious organization.

The separate and distinct status of the Chicopee Society terminated upon merger, but it continued to exist as a part of the merged society. See *Curtis* v. *First Church in Charlestown,* 285 Mass. 73 (1933). The Spaulding bequests are not conditioned on separate existence. Nor are they conditioned on the required religious services being conducted within the city limits of Chicopee. They are conditioned only on the Chicopee Society's continuing to hold services as a Unitarian religious organization. We hold that it has continued to do so through its merger with the Springfield Society.

There is no evidence that the doctrinal content of the religious services conducted by the Springfield Society differs from that of the services previously offered by the Chicopee Society. The primary intent of the testatrix was to provide for the continued holding of Unitarian religious services. The income from the bequests under her will continues to be used for that purpose. That a change in location was necessitated by practical considerations and changed circumstances should not defeat the bequests. See *Union Congregational Soc'y* v. *South Shore Nat'l Bank,* 342 Mass. 41 (1961); *Ford* v. *Rockland Trust Co.,* 331 Mass. 25 (1954); *Saunders* v. *President & Fellows of Harvard College,* 318 Mass. 447 (1945).

3. On the basis of the foregoing discussion, we conclude that the merger vested in the Springfield Society the beneficial interest formerly held by the Chicopee Society in the trusts established pursuant to the Stearns and Spauld-

ing wills, subject to the same conditions. Neither the merger itself nor the subsequent postmerger conduct of the Springfield Society violated the conditions specified in either will. Therefore, the income from the Stearns and Spaulding trusts must be paid by First Bank to the Springfield Society from the effective date of the merger, the date when First Bank ceased to make periodic income payments.

The judgments are reversed, and new judgments are to be entered in accordance with this opinion.

*So ordered.*